763 So.2d 1249 (2000)
Barry SOLINO, Appellant,
v.
STATE of Florida, Appellee.
No. 4D99-2452.
District Court of Appeal of Florida, Fourth District.
June 21, 2000.
Richard L. Jorandby, Public Defender, and Ellen Griffin, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and David M. Schultz, Assistant Attorney General, West Palm Beach, for appellee.
HAZOURI, J.
Barry Solino appeals his conviction and sentence for escape. Solino was charged by information with one count of escape in violation of sections 944.40 and 951.24(4), Florida Statutes (1997). Solino filed two separate motions to suppress the traffic stop which led to the escape charge; both were denied by the trial court. Solino was then tried in a non-jury trial and was convicted. The trial court erred in denying the first motion to suppress in which Solino alleged that there was no founded suspicion to make a stop. We reverse the conviction and sentence.
On January 23, 1999, Solino was driving with three friends when he was stopped by Palm Beach County Deputy Sheriff Milton Jacobs. Jacobs stopped Solino's vehicle, a green Nissan, after receiving information from an anonymous motorist driving a white SUV (sport utility vehicle), that a bottle had been tossed out the window of the green Nissan proceeding down the highway in front of the SUV. The driver of the SUV had flagged Jacobs down in order to relay this information. Deputy Jacobs did not obtain the name of the SUV driver nor did he record the license tag number of the SUV. Jacobs did not see the bottle thrown from Solino's car nor did he attempt to locate the bottle. He did not see Solino commit any traffic violation and he made the stop based solely upon the statement of the unidentified motorist.
Deputy Jacobs stated that upon stopping the Nissan, Solino, who was the driver, gave his name as "Barry Jervis" and stated that he did not have a driver's license. Deputy Jacobs conducted a pat down search and had Solino sit in his patrol car while he investigated the status *1250 of Solino's driver's license. Jacobs was unable to locate any information for "Barry Jervis" based on the stated date of birth. One of the passengers in Solino's car advised Jacobs of Solino's identity. Upon making a computer check, Jacobs found that Solino's license had been suspended and he was in violation of probation for a prior conviction of burglary. When questioned further, Solino admitted his identity. Deputy Jacobs told Solino he was under arrest for driving under a suspended license and for violation of probation. He ordered Solino out of the patrol car so that he could be placed in handcuffs at which time Solino ran from the scene and disappeared into a housing development. Solino argues that the stop was not based on a reasonable suspicion because the only indication of criminal activity was the unconfirmed report of an anonymous tipster. The state counters that the SUV driver was a citizen-informant and, therefore, independent confirmation of criminal activity was unnecessary.
In State v. Evans, 692 So.2d 216 (Fla. 4th DCA 1997), this court discussed the law with respect to investigatory stops and informants' tips. We stated:
An investigatory stop, like the one in this case, must be based upon "reasonable suspicion." Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Among the definitions of "reasonable suspicion" is such suspicion as would "warrant a man of reasonable caution in the belief that [a stop] was appropriate." Id. at 22, 88 S.Ct. at 1880.
Not all tips are of equal value in establishing reasonable suspicion; they "may vary greatly in their value and reliability." ... Anonymous tips are at the low-end of the reliability scale:
The opinion in [Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)] recognized that an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity inasmuch as ordinary citizens generally do not provide extensive recitations of the basis of their everyday observations and given that the veracity of persons supplying anonymous tips is "by hypothesis largely unknown, and unknowable." Id. at 237, 103 S.Ct. at 2332.

Alabama v. White, 496 U.S. [325]at 329, 110 S.Ct. [2412] at 2415, 110 L.Ed.2d 301 [(1990)].
Because an anonymous caller's basis of knowledge and veracity are typically unknown, these tips justify a stop only once they are "sufficiently corroborated" by police. Id. at 330, 110 S.Ct. at 2416. Accord Pinkney v. State, 666 So.2d 590 (Fla. 4th DCA 1996)(anonymous tip requires "detailed and specific information corroborated by police investigation" since the informant's veracity, reliability, and basis of knowledge are unknown).
Evans, 692 So.2d at 218 [Citations omitted]. However, an informant may not be deemed anonymous if his or her identity is readily ascertainable. "The cases support the proposition that an informant's actual name need not be known so long as her identity is readily discoverable." Id. at 219. This court in Evans went on to define a "citizen-informant."
Not only was [the informant] an identified informant, rather than an anonymous one, but she qualifies as a "citizen-informant," whose information is at the high end of the tip-reliability scale. "A citizen-informant is one who is `motivated not by pecuniary gain, but by the desire to further justice.'" As one commentator has explained:
[T]he courts have quite properly drawn a distinction between [informers likely to have been involved in the criminal activity] and the average citizen who by happenstance finds himself in the position of a victim of or a witness to criminal conduct and thereafter relates to the police what he knows as a matter of civic duty. One who qualifies as the latter type of individual, sometimes referred to as a *1251 "citizen-informer," is more deserving of a presumption of reliability than the informant from the criminal milieu.
Evans, 692 So.2d at 219 [Citations omitted].
The trial court in Evans granted a motion to suppress because the information which the police used to justify the stop was based on an uncorroborated, anonymous tip. Our court reversed the trial court's order to suppress and found that the tip which the police used to justify the stop provided a sufficient factual basis to establish that the informant was not anonymous and that the information conveyed was corroborated. Our court also concluded that the informant was a "citizen informant" which added to the reliability of the information justifying the investigatory stop.
The facts in Evans are distinctly different from those in the instant case. In Evans the information came from Drema Steel, a manager at McDonald's on U.S. Highway 1 in Vero Beach, who was working at the drive-thru one evening at around 10:30 P.M., when the defendant, Tom Henry Evans, placed an order. Ms. Steel believed that Evans was intoxicated and testified that, to the best of her knowledge, Evans was "wasted." She noticed that he was incoherent, fumbling to get the bag of food and his eyes were "really dilated." Furthermore, she could smell the odor of alcohol.
While Evans was still in the line between two other vehicles, Ms. Steel phoned 911. She reported her name, her address, her location and that she was the manager of the McDonald's. Likewise, she reported the customer's apparent drunkenness, and provided a description of his vehicle, a small blue Honda low-rider truck, and its tag number.
Officer Roger Hall arrived at McDonald's after being advised by the dispatcher that a McDonald's employee had called about an intoxicated driver. Officer Hall did not know the caller's name, but he knew that the caller was somebody from McDonald's. When Officer Hall pulled into the parking lot, he and Ms. Steel looked at each other, and she pointed at Evans's vehicle to let Officer Hall know he was the suspect. The vehicle's description and tag number matched those provided by Ms. Steel to the dispatcher and relayed to Officer Hall. Officer Hall waited for the truck to exit the drive-thru and pull onto the street after which he pulled the vehicle over.
According to Officer Hall's police report, Evans smelled of alcohol and his speech was "mumbled." After conducting some physical performance tests, Officer Hall attempted to arrest Evans; however, Evans resisted and a struggle ensued. After Evans was subdued, a search of his vehicle revealed half a bottle of beer and ten packages of marijuana. Evans was charged with driving under the influence of alcohol, resisting arrest, and possession of marijuana with intent to sell. In the instant case, Deputy Jacobs had none of the indicia of reliability, identity or corroboration existing in Evans.
We find the case of State v. Rewis, 722 So.2d 863 (Fla. 5th DCA 1998), factually on point and supportive of Solino's assertion that the trial court erred in failing to grant his motion to suppress. In Rewis several sheriffs' deputies were on duty at an interstate highway rest stop where they had been working a traffic detail for construction being done on the highway. A truck driver in a semi pulled up, got out and told the officers that he had seen a Firebird weaving all over the road and gave the officers the Firebird's license number. The truck driver then went on his way. The Firebird then entered the rest stop and the police flagged it down solely because of the truck driver's tip. While one officer checked for sobriety, which was never determined, another found a white powdery substance in a glass bottle which tested positive for heroin. Rewis was charged with possession of a controlled *1252 substance. In his motion to suppress, Rewis argued that the truck driver was an anonymous tipster whose identity was unknown as was his motive. The state contended the driver of the semi was a citizen informant, rather than an anonymous tipster, whose information was considered at the high end of the reliability scale. The trial court held that there was no reasonable suspicion to justify the stop. In affirming the trial court, the district court held:
Although the deputies were given the tip by the passing driver, for all practical purposes he was an anonymous tipster. His identity is unknown, any means of locating him is unknown, as are his motives for disclosing the information. He might have pointed out the Firebird because he was angered by its driver, might have been cut off by the driver or been the recipient of an obscene gesture, or for any reason other than the one he gave deputies. The deputies had no way to corroborate the information, and agreed at the hearing that they had not themselves seen anything that would have given them reason to stop the Firebird other than the tip.
Id. at 864.
We find the facts in the instant case are almost identical to the facts in Rewis and are persuaded by the holding of the fifth district. We hold that the driver of the white SUV was nothing more than an anonymous tipster who could not be identified or located and whose information was not corroborated. Thus, there was not sufficient basis to establish a reasonable suspicion for Deputy Jacobs to make an investigatory stop. Since the investigatory stop was unlawful, the information obtained by Deputy Jacobs that led to the arrest was "fruit of the poisonous tree" and should have been suppressed. See Wong Sun v. U.S., 371 U.S. 471, 487-488, 83 S.Ct. 407, 9 L.Ed.2d 441, (1963). Without this information, the arrest is unlawful thereby negating any basis for the charge of escape. We reverse the conviction and sentence.
KLEIN and STEVENSON, JJ., concur.