KLEIN, J.
After being informed by a man in a Wal-Mart parking lot that the occupants of a car were behaving in a suspicious manner, an officer stopped the vehicle and found drugs. Appellant, who was charged with possession, moved to suppress on the ground that this was an anonymous tip because the officer did not know the identity of the person from whom she received the information. We affirm the denial of the motion to suppress.
Because there had been a number of recent burglaries of vehicles in the Wal-Mart parking lot, the officer was patrolling the area more than she normally would have. An older man standing in front of the store flagged him down and advised that he was just about to call the police about the suspicious activity of a gray vehicle. The man, who was waiting outside while his wife was shopping, informed the officer that the vehicle was slowly moving up and down the rows of vehicles in the parking lot, and black males were getting out, looking into vehicles, and getting back in and moving on. About a minute or so into the conversation the man observed the vehicle leaving the parking lot and pointed it out to the officer. The officer then followed the vehicle, stopped it, smelled marijuana and observed marijuana smoke, and found drugs. The car was occupied by a white female driver and the white male passenger, J.P.N.; however, they explained that their friends, two black males, had been riding with them, but they had let them out at their own car in the parking lot.
Appellant appeals the denial of his motion to suppress, arguing that the information in this case was an anonymous tip which, without corroboration, is insufficient for an investigatory stop. Appellant relies on Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), in which an anonymous telephone caller informed the police that a young black man who was waiting at an identified bus stop, wearing a plaid shirt, and carrying a gun. The police proceeded to the bus stop where they observed three black men, one wearing a plaid shirt. Although the anonymous call was the only basis for a suspicion of illegal activity, the police approached the man, ordered him to put up his hands, and patted him down, finding a gun in his pocket. The Court held that the anonymous tip was not sufficiently reliable to establish reasonable suspicion for a stop under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
Most of the cases in which it has been held that the information was insufficient because it came from an anonymous tip involved information received over the telephone. Two exceptions involving face-to-face contact are Solino v. State, 763 So.2d 1249 (Fla. 4th DCA 2000) and State v. Rewis, 722 So.2d 863 (Fla. 5th DCA 1998). In Solino an officer was told in *1068 person, by a passing motorist, that a bottle had been tossed out of the window of a green Nissan which had been driving in front of the motorist. The motorist had flagged the officer down in order to relay this information, but the officer did not obtain his name or tag number. He did, however, find the Nissan and discovered that the defendant was driving without a license. We concluded, based on Reivis, which was factually on all fours, that even though the informant was face-to-face with the officer, the fact that his identity was unknown made the informant an anonymous tipster, and in the absence of corroborating information, the motion to suppress should have been granted.
Federal cases have upheld searches where officers have received face-to-face information from anonymous persons. In U.S. v. Heard, 367 F.3d 1275 (11th Cir. 2004), an officer was informed that a fight was in progress in a MARTA (the Atlanta transit system) station. After going inside the officer observed a woman yelling at the defendant and was able to resolve the dispute. The defendant then went one direction while the officer and the woman walked in the other, and the woman then informed the officer that the defendant was carrying a weapon. The officer instructed the woman to remain where she was, and then searched the defendant and found the weapon. The woman, however, did not remain at the station and was never seen by the officer again. The defendant was convicted of possession of a firearm by a felon.
The defendant in Heard argued for suppression based on J.L., but the eleventh circuit disagreed, explaining:
A face-to-face anonymous tip is presumed to be inherently more reliable than an anonymous telephone tip because the officers receiving the information have an opportunity to observe the demeanor and perceived credibility of the informant. See, e.g., U.S. v. Valentine, 232 F.3d 350, 354 (3d Cir.2000) (reasoning that face-to-face anonymous tip is more rehable than anonymous telephone tip because officers can judge the informant’s reliability); U.S. v. Christmas, 222 F.3d 141, 144 (4th Cir.2000) (citing cases supporting the proposition that face-to-face anonymous informants are more reliable than anonymous telephone tipsters for same reason); United States v. Sierra-Hernandez, 581 F.2d 760, 763 (9th Cir.1978) (“Unlike a person who makes an anonymous telephone call, this informant confronted the agent directly.”).
In this case, Gore had an opportunity to judge the demeanor and credibility of the unknown woman. Gore stated that the woman seemed frightened when she reported Heard’s weapon, and Gore reasonably presumed that Heard and the unidentified woman had some sort of relationship — they were arguing over money and Heard paid the woman the amount she demanded. See, e.g., Christmas, 222 F.3d at 144 (police reasonably concluded that informant, who lived two doors down from suspect, had knowledge of criminal activities occurring at her neighbor’s home). Thus, reasoning that Heard knew the woman, Gore could reasonably conclude that she would have reliable information about whether Heard possessed a weapon.
Heard, on the other hand, contends that Gore did not have reasonable suspicion to search him because Gore had concluded that the informant was unreliable after she fled the MARTA station. Gore testified, however, that he had decided to frisk Heard before the woman ran. The reliability of a tip is considered in light of all relevant circumstances, which include — but is not limited to — a consideration of whether the *1069 officer can track down the tipster again. In this case, although the unknown woman fled the MARTA station, because she and Heard apparently knew each other, she may have subjected herself to reprisal from Heard based on the tip she gave to Gore — which makes her more reliable. See, e.g., Christmas, 222 F.3d at 144 (informant who notified police that her neighbor was involved in illegal activity could have “exposed herself to the risk of reprisal ... [from] someone associated with the illegal activity.”). Considering the totality of the circumstances in this case, Gore reasonably concluded that the unknown woman’s tip was reliable, (footnote omitted.)
Heard, 367 F.3d at 1279.
As the Heard court observed, whether reliance on the tip is reasonable depends on the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Applying the reasoning of Heard to this case, we conclude that there was sufficient reliability of the information received by the officer. First, the officer was patrolling the parking lot more than usual because there had been a number of recent burglaries of cars, and the tip involved conduct consistent with car burglaries. Second, the officer conversed with the man for sixty to ninety seconds face-to-face and had an opportunity to assess his credibility-
This case is distinguishable from Solino and Rems. In those cases the tip was not consistent with recent reports of similar crimes being committed in the area. We accordingly affirm the denial of the motion to suppress.
GUNTHER and TAYLOR, JJ., concur.