SILBERMAN, Judge,
Dissenting.
I share the majority’s concern, expressed in footnote 3, as to whether the police had a reasonable suspicion that a concealed firearm violation had occurred. However, as the majority correctly states, Mr. Wallace did not raise this issue in the trial court or on appeal. Instead, Mr. Wallace argues that Mr. Ike-Onyechi’s statements to the police did not support an investigatory stop and, therefore, that Mr. Wallace’s incriminating admissions to the police should have been suppressed. I respectfully dissent from the majority decision because in my view, considering the totality of the circumstances, the investigatory stop of Mr. Wallace was legal.
Before the officers detained Mr. Wallace, they arrested Mr. Ike-Onyechi and were questioning him at the scene about the gun and marijuana found in his car. Mr. Ike-Onyechi stated that he, a person he knew from past contact as Mooch, and a third person had driven together to the lounge. He stated that Mooch had been seated in the front passenger seat and had placed the gun under that seat so as not to take it into the lounge.
*731 Minutes later, Mr. Wallace came out of the lounge and was walking nearby. Mr. Ike-Onyeehi immediately pointed him out to the officers and identified him as Mooch. Based on the testimony of one of the officers, it appears that other individuals were also in the area and that Mr. Ike-Onyechi did not simply point to the first person who happened by in an effort to shift blame from himself.
After Mr. Ike-Onyechi identified Mr. Wallace, the officers approached and stopped him. Officer Camp read him the Miranda warnings and began asking him questions. Mr. Wallace did not invoke his right to an attorney or refuse to speak with Officer Camp. Officer Camp indicated that Mr. Wallace did not seem upset and that he spoke in a normal voice.
Mr. Wallace first denied that he had arrived in Mr. Ike-Onyechi’s car but then admitted that he had been a passenger in the car and that he had put the gun under the car seat. He also told Officer Camp that he had recently gotten out of prison. Officer Camp did a criminal history check, confirmed Mr. Wallace’s felony conviction, and then arrested him for being a felon in possession of a firearm.
In Adams v. Williams, 407 U.S. 143, 145-46, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (citations omitted), the Supreme Court recognized:
The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.
The Court observed that because the informant was personally known to the police officer and had provided information in the past, the case was stronger than if the information had been provided by an anonymous telephone tip. Id. at 146, 92 S.Ct. 1921. Further, the informant personally provided information that was immediately verifiable at the scene and “might have been subject to immediate arrest for making a false complaint” had the tip been proven to be incorrect. Id. at 146-47, 92 S.Ct. 1921.
In Illinois v. Gates, 462 U.S. 213, 230-31, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court concluded that the totality of the circumstances must be considered in evaluating whether an informant’s tip provided probable cause for the issuance of a search warrant. See also J.P.N. v. State, 931 So.2d 1066, 1069 (Fla. 4th DCA 2006) (recognizing that “whether reliance on the tip is reasonable depends on the totality of the circumstances”). In Gates, the Court observed that “even if we entertain some doubt as to an informant’s motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case.” Id. at 234, 103 S.Ct. 2317.
In State v. Gil, 780 So.2d 297, 299 (Fla. 3d DCA 2001), the noted the distinction “between a true anonymous tip and the situation where there is a specific confidential informant whose reliability has not been determined.” The court stated as follows:
[W]hen an informant comes forward personally to give information that is immediately verifiable at the scene, that information is more reliable than any received via an anonymous phone tip. *732 Although an unverified tip from an untested informant may be insufficient to justify an arrest or a search warrant, if the tip itself carries sufficient indicia of reliability, it may justify an investigatory stop.
Id. (citations omitted).
Although Mr. Ike-Onyechi had not previously provided information to the police, he was not an anonymous tipster. He was in custody, and the police had ascertained his identity. He told the police about the gun’s presence in his car based on his personal knowledge, and he identified Mr. Wallace as the person who put the gun in the car before they went into the lounge. Mr. Ike-Onyechi gave this information at the scene shortly after his arrest, and Mr. Wallace was detained at the scene. Significantly, while Mr. Ike-Onyechi told the police that Mr. Wallace had put the gun in the car, he did not try to blame Mr. Wallace for the presence of marijuana in the car. Further, if Mr. Ike-Onyechi’s information proved to be false, he may have been subject to a charge of making a false report under section 837.05(1), Florida Statutes (2001).
In summary, the police officers were investigating purported criminal conduct relating to a firearm and marijuana. They arrested Mr. Ike-Onyechi, who claimed innocence, and as to the firearm, he told the officers that Mooch had accompanied him to the lounge and had placed the firearm in his car. Mr. Wallace then exited the same lounge from which Mr. Ike-Onyechi had exited. Although other individuals were in the area, when Mr. Wallace exited the lounge Mr. Ike-Onyechi specifically identified him as the person who had placed the firearm in his car. The officers then conducted an investigatory stop to ascertain whether Mr. Wallace was, in fact, connected to Mr. Ike-Onyechi and the firearm.
Consistent with Adams, the officers were not required to simply shrug their shoulders as Mr. Wallace walked by. Rather, they stopped him “to determine his identity or to maintain the status quo momentarily while obtaining more information.” Adams, 407 U.S. at 146, 92 S.Ct. 1921. Under these circumstances, I agree with the trial court that the information that Mr. Ike-Onyechi provided to the police was sufficient to allow the investigatory stop of Mr. Wallace.