HAZOURI, J.
 

 Kirenia Fuentes pleaded no contest to the charges of possession of cannabis over twenty grams and possession of drug paraphernalia. In the plea, Fuentes reserved her right to appeal her motion to suppress, which was denied by the trial court and dispositive in this matter. Fuentes, as argued in her motion to suppress, contends that the initial investigatory stop, which led to the discovery of the cannabis and drug paraphernalia, was not based on a reasonable suspicion of criminal activity. We reverse the trial court’s denial of the motion to suppress, as the state failed to prove there was the requisite reasonable suspicion needed to make the investigatory stop.
 

 Officer Michelle Keirnan of the City of Plantation Police Department in Broward County, Florida, received a call from police dispatch. The call was in regards to “an anonymous complaint that a white female and white male were punching each other inside an [sie][U]-haul truck.” At the time of the call, Officer Keirnan was two blocks from the location where the alleged incident was occurring. Immediately after receiving the call, Officer Keirnan proceeded to that area. As known by Officer Keir-nan, there is also a U-haul rental facility approximately a half-mile from the area in question.
 

 As Officer Keirnan approached the area where the alleged incident occurred, she stopped at an intersection. She saw a U-haul truck on the opposite side of the intersection moving in the opposite direction. Inside the truck were a female driver and male passenger. She turned her patrol car around and began driving behind the U-haul truck. She then turned on her patrol car’s flashing lights and pulled over the truck. Before she pulled over the truck, Officer Keirnan did not notice any physical altercation going on between the passengers, nor did she observe any erratic driving, speeding, or swerving.
 

 Officer Keirnan exited her patrol ear. Due to heavy traffic, she walked up to the passenger’s side of the truck. At that point, Officer Keirnan “knew in [her] mind [that] whoever was in the passenger side [she] was going to take out of the car to talk to.” She asked the male passenger to step out of the truck and tell her what was going on. Because this was a possible domestic violence situation, Officer Keir-nan wanted to separate the couple and talk to them individually. The female driver, who was Fuentes, remained in the car.
 

 Approximately two minutes later, Officer Ervins G. Hyppolite arrived. Officer Keirnan asked Officer Hyppolite to talk to Fuentes. As Officer Hyppolite walked over to Fuentes, who was still sitting in the truck, Officer Keirnan and the male passenger discussed the alleged domestic violence. The male passenger told Officer Keirnan that he and Fuentes were having a verbal, not physical, altercation. There was no evidence of a physical altercation on the male passenger’s person.
 

 Officer Hyppolite approached the driver’s side of the truck. He asked Fuentes whether there was a physical altercation between her and the male passenger. She said no, and that she was having a verbal altercation with the male passenger. Officer Hyppolite then asked Fuentes to exit the truck and, due to traffic, relocate to its
 
 *1234
 
 back. As she exited, a clear baggy with a green leafy substance inadvertently fell from her lap. Officer Hyppolite suspected that it was marijuana. As Fuentes started walking toward the back of the truck, Officer Hyppolite seized the baggy.
 

 Upon arriving at the back of the truck, Officer Hyppolite again asked Fuentes if there was a physical altercation. She said no. Officer Hyppolite found no evidence of a physical altercation on Fuentes’s person. Officer Hyppolite then asked Fuentes who the truck belonged to. She said her and the male passenger. Officer Hyppolite obtained Fuentes’s consent to search the truck. Fuentes also signed a consent to search waiver form. Officer Hyppolite subsequently arrested Fuentes, as he believed the substance in the clear baggy was marijuana.
 

 Officer Hyppolite then searched the truck. Underneath the driver’s seat he found another clear bag filled with suspected marijuana. He also found a gallon bag in the back of the vehicle filled halfway with suspected marijuana, as well as two heat lamps commonly used to cultivate marijuana and two brown bags full of small Ziploc bags (the small Ziploc bags were empty). He subsequently field tested the substances found in the two clear bags and the gallon bag. The test was positive for marijuana. The total amount of marijuana found was 175.8 grams.
 

 Fuentes contends the trial court erred by not suppressing the evidence obtained. She argues that the evidence was impermissibly gathered because it was the fruit of an investigatory stop conducted without a reasonable suspicion of criminal activity. We agree.
 

 “[An appellate court] is required to accept the trial court’s determination of disputed issues of fact in a motion to suppress, as the trial court is vested with the authority to determine the credibility of the witnesses and the weight of the evidence. Although [appellate courts] are required to accept the trial court’s determination of the historical facts leading to the search, a defendant is entitled to a
 
 de novo
 
 review of whether the application of the law to the historical facts establishes an adequate basis for the trial court’s finding of reasonable suspicion or probable cause.”
 

 Manning v. State,
 
 957 So.2d 111, 113-14 (Fla. 4th DCA 2007) (alteration in original) (quoting
 
 Lee v. State,
 
 868 So.2d 577, 579 (Fla. 4th DCA 2004) (citing
 
 Curtis v. State,
 
 748 So.2d 370 (Fla. 4th DCA 2000))).
 

 Furthermore, “the determinations of a trial court in considering a motion to suppress come to an appellate court clothed with a presumption of correctness,” and “a reviewing court will interpret the evidence and reasonable inferences derived therefrom in a manner most favorable to such ruling.”
 
 State v. Pye,
 
 551 So.2d 1237, 1239 (Fla. 1st DCA 1989). Also, “ ‘[o]nce a defendant challenges his arrest and search without a warrant, the burden of proving its validity as a predicate for lawful admissions seized in evidence is upon the state.’ ”
 
 Cook v. State,
 
 873 So.2d 624, 624-25 (Fla. 2d DCA 2004) (quoting
 
 King v. State,
 
 371 So.2d 120, 122 (Fla. 1st DCA 1978)).
 

 In regards to the requirements for an investigatory stop, law enforcement agents may “stop and detain a person
 
 for
 
 investigation,” so long as the law enforcement agent has “a reasonable suspicion” that a “person has committed, is committing, or is about to commit a crime. Whether an officer’s suspicion is reasonable is determined by the totality of the circumstances which existed at the time of the stop and is based solely on facts known to the officer before the stop.”
 
 Slydell v. State,
 
 792 So.2d 667, 671 (Fla. 4th DCA
 
 *1235
 
 2001) (citations omitted). “In order not to violate a citizen’s Fourth Amendment rights, an investigatory stop requires a well-founded, articulable suspicion of criminal activity. Mere suspicion is not enough to support a stop.”
 
 Popple v. State,
 
 626 So.2d 185, 186 (Fla.1993). More precisely, a “founded suspicion is one which has a factual foundation in the circumstances observed by the officer, when those circumstances are interpreted in the light of the officer’s knowledge and experience.”
 
 State v. Davis,
 
 849 So.2d 398, 400 (Fla. 4th DCA 2003).
 

 The police investigation in this case began with a tip given by an anonymous tipster to police dispatch. When an anonymous tip is involved in instigating an investigatory stop, a court’s consideration of the “totality of the circumstances includes [the] consideration of the nature of the informant.”
 
 State v. Evans,
 
 620 So.2d 802, 803 (Fla. 2d DCA 1993).
 

 Because an anonymous tipster’s “basis of knowledge and veracity are typically unknown,” tips they give “justify a stop only once they are ‘sufficiently corroborated’ by police.”
 
 State v. Evans,
 
 692 So.2d 216, 218 (Fla. 4th DCA 1997) (quoting
 
 Alabama v. White,
 
 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)).
 

 This requirement of corroboration was exemplified in
 
 Baptiste v. State,
 
 995 So.2d 285 (Fla.2008). In that case, a police officer received a radio dispatch stating that an anonymous tipster saw a black male, who was wearing a white T-shirt and blue-jean shorts, waiving a firearm in front of a grocery store.
 
 Id.
 
 at 288. The officer proceeded to the grocery store, where another police officer had already stopped a black male who was wearing a white T-shirt and blue-jean shorts.
 
 Id.
 
 The black male was George Baptiste. Based on the informant’s tip, the officers ordered Baptiste to the ground and searched his person, finding a firearm.
 
 Id.
 
 The Florida Supreme Court held that, given the totality of the circumstances, there was not a reasonable suspicion of activity justifying this investigatory stop.
 
 Id.
 
 at 296. This was because: (1) the officers “received only an anonymous tip stating that a black male wearing a white T-shirt and blue-jean shorts in a described location was in possession of a gun”; (2) the tipster “did not provide predictive-conduct information indicating any ‘inside’ knowledge about Baptiste, nor did he offer any predictive information that would have corroborated his claim that Baptiste was engaged in illegal conduct”; and (3) “when the officer[s] arrived on scene, [they] w[ere] only able to corroborate innocent details .... [and] Baptiste
 
 was not
 
 engaged in any unlawful acts, unusual conduct, or suspicious behavior; he was merely walking down the street.”
 
 Id.
 

 Furthermore, in
 
 Sapp v. State,
 
 763 So.2d 1257, 1258 (Fla. 4th DCA 2000), this court held that an investigatory traffic stop was constitutionally invalid because it was based solely on a “be on the lookout” (“BOLO”) that “was not sufficiently specific to create a founded suspicion that the occupants of the vehicle ... had committed or were about to commit a crime.”
 
 Id.
 
 The stop was impermissible because the BOLO was “too general to create any legal justification to stop appellant’s car,” as it “provided no information as to the speed, direction, make or model of the car,” and because the officers did not observe the car engaging in “any suspicious conduct or activity consistent with guilt.”
 
 Id.
 
 at 1259.
 

 Likewise, in
 
 L.T.S. v. State,
 
 391 So.2d 695, 695 (Fla. 1st DCA 1980), the First District held that a stop of an automobile was “improper because the police did not have a well-founded or reasonable suspicion” that a crime was being committed. That stop was instituted pursuant to a
 
 *1236
 
 BOLO advising the police that a robbery was just perpetrated at a liquor store by two white males with curly hair.
 
 Id.
 
 Within approximately one to two minutes of the BOLO, a police officer, while traveling in his patrol car, observed an automobile traveling on the road near the liquor store.
 
 Id.
 
 The automobile was traveling away from the store and contained three to four males, two or three of whom had “fairly bushy” hair.
 
 Id.
 
 The First District held that these circumstances did not create a well-founded suspicion of criminal activity because “[t]he description of the suspects given over the BOLO was lacking in specificity,” and because “there was no indication” that the road the suspects were traveling on was untraveled at the time of the stop or “was one of the few routes available for flight from the scene of the robbery.”
 
 Id.
 
 at 696.
 

 Similarly, in
 
 Kalnas v. State,
 
 862 So.2d 860, 862 (Fla. 4th DCA 2003), this court held that an investigatory stop of a person for the purpose of investigating a burglary was invalid. Although an anonymous tipster in that case gave detailed information of the crime being committed and provided a detailed description of the suspect, this court held that the stop was invalid because “when the police officer arrived on the scene, he was only able to verify the innocent details of identification” and witnessed no other corroborating illegal or suspicious activity.
 
 Id.
 
 The Fifth District rendered an analogous holding in
 
 Nettles v. State, 957
 
 So.2d 689, 689-90 (Fla. 5th DCA 2007), stating that an investigatory stop based on an accurate description of a suspect given by an anonymous tipster alone, and without a corroborating indicator that the suspect was engaged in criminal activity, does not form a well-founded suspicion of criminal activity.
 

 In the instant case, the trial court erred in denying Fuentes’s motion to suppress, as Officer Keirnan did not have a reasonable suspicion of criminal activity when she conducted the investigatory stop. The facts known to Officer Keirnan at the time of the stop were not indicative of criminal activity. Specifically, Officer Keirnan observed a female driver and male passenger in a U-haul truck — as described by the anonymous tipster — but did not corroborate this identification with any criminal behavior, i.e., she did not see the couple physically attacking each other or otherwise engaging in illegal or suspicious activity. Also, and as known by Officer Keir-nan, the place where the truck was pulled over was located near a U-haul rental facility, further negating the premise that these two individuals were the subject of the anonymous tipster’s call, as the couple may have been two other people who rented a U-haul truck at the same time the anonymous tipster informed the police of the possible domestic violence.
 

 We, therefore, reverse the denial of the motion to suppress. Because the motion to suppress is dispositive, we direct the trial court to vacate the conviction and discharge Fuentes.
 

 Reversed and Remanded with Directions.
 

 DAMOORGIAN and CIKLIN, JJ., concur.