POLEN, J.
Appellant, George McKelvin, appeals the trial court’s order adjudicating him guilty of possession of a firearm by a convicted felon (Count I) and possession of cocaine (Count II). McKelvin pled no contest to the charges following the trial court’s denial of his motion to suppress. The court sentenced McKelvin to concurrent terms of three years in prison followed by two years probation on both counts. We hold that the trial court erred in denying *403 McKelvin’s motion to suppress and reverse.
At the hearing on McKelvin’s motion to suppress, Detective James Gibbons and Detective Leonard Tinelli testified that on September 23, 2008, they received information from an unidentified anonymous source who approached them while they were on an unrelated stop. The source told them that a black male in a burgundy or red Dodge Charger with 23 or 24-inch chrome rims was engaged in “narcotics activity.” The person specifically described a black male who was between 50 and 55 years old, about 5'9" or 5'10", who had short cropped hair and who weighed between 180 and 195 pounds. Detective Tinelli specified that the source told the officers that the car “continuously drove into the Budget hotel/motel ... five or six times a day.” The source gave them the tag number of the vehicle. Finally, the source told the officers that s/he had witnessed “hand-to-hand transactions” in which the occupant of the Charger would take money from a person and give the person an object. The detectives were dressed in police tactical gear which contained clear markings identifying them as police officers.
The source wanted to remain anonymous. Accordingly, the officers never took the informant’s name, phone number or address.
The detectives parked their unmarked vehicle near the Super Budget Motel mentioned by the source. About an hour or an hour and a half later, a Charger, matching the description and tag number given by their source, arrived at the motel. Although they did not see any traffic infractions or other indication of illegal activity, and the car contained a female passenger, unmentioned by the anonymous source, the detectives activated their lights and stopped the vehicle after checking the tag number.[1]
Detective Gibbons approached the driver’s side of the Charger and saw the driver remove a black object from his waistband and put it beneath his seat. Gibbons “clearly identified [the object], due to my training, knowledge, and experience, as a gun.” He immediately removed the driver from the vehicle. The driver threw a bag which had white, rock-like substances in it to the floor.
Defense counsel agreed with the judge that the motion would be determined by the legality of the initial stop because once the officers stopped and approached the vehicle, they saw, in plain view, that the driver had a gun which he threw under the seat. Therefore, the subsequent search and detainment was justified by probable cause. The court found that the fact that the informant approached the police officers, gave them information in person, provided detailed information of the activity which was suspicious, and provided a detailed description of the vehicle, the occupant, and the tag number gave the officers reasonable suspicion of criminal activity sufficient to justify the initial stop of the vehicle. Accordingly, the court denied McKelvin’s motion to suppress.
“In reviewing an order on a motion to suppress, an appellate court should defer to the trial court’s factual findings but review de novo the application of the law to the facts.” Dixon v. State, 36 So.3d 920, 923 (Fla. 4th DCA 2010). A law *404 enforcement officer may stop and detain an individual for investigation so long as he has a reasonable suspicion that the individual has committed, is committing, or is about to commit a crime. Fuentes v. State, 24 So.3d 1231, 1234 (Fla. 4th DCA 2009). Whether the officer’s suspicion was reasonable is determined by considering the totality of the circumstances and the facts known to the officer before the stop. Id.
McKelvin asserts that the present case is “on all fours” with Fuentes, in which this court recognized that information provided by an anonymous tipster provides the basis for an investigatory stop only once it is sufficiently corroborated by the police because the basis of the tipster’s knowledge and veracity are generally unknown. 24 So.3d at 1235. In Fuentes, an officer received a call from dispatch regarding an anonymous complaint that a white female and white male were punching each other inside a U-haul truck. Id. The officer drove toward the reported location, which was near a U-haul rental facility. She observed a white female driving a U-haul truck with a white male passenger. She followed and ultimately pulled over the vehicle. Id. When another officer arrived and asked Fuentes to step out of the vehicle, Fuentes opened the door and a bag of marijuana fell from her lap. Id. We reversed the trial court’s denial of the motion to suppress because the officer did not have reasonable suspicion of criminal activity at the time she conducted the investigatory stop. Id. at 1236.
The State points out that the instant case is unlike Fuentes in that, here, the police were approached by an individual in person who gave detailed information regarding the suspicious activity. Thus, the individual in the instant case was more like a “citizen informant,” as discussed by the Florida Supreme Court in Baptiste v. State, 995 So.2d 285 (Fla.2008):
State and federal case law establishes that the reliability of a tip which alleges illegal activity varies based upon whether the tip is truly anonymous, such as an anonymous telephone call, or whether it is offered by a “citizen infoi'mant” who approaches the police in person to report criminal activity. A tip from a citizen informant falls at a higher end of the reliability scale. This hierarchy has been described as based on various factors. First, a citizen informant may be motivated not by pecuniary gain, but by the desire to further justice. Second, unlike an anonymous tipster, a witness who directly approaches a police officer may be held accountable for false statements. Third, a face-to-face tip may be viewed as more reliable because the officers who receive the tip have the opportunity to observe the demeanor and evaluate the credibility of the person offering the information. Fourth, a witness who approaches the police in person may subject himself or herself to potential reprisal from the defendant, thereby rendering the tip more reliable than an anonymous tip.
Id. at 291 (citations omitted).
The State also points to several cases in which this court has noted the greater reliability of face-to-face tips. For example, in J.P.N. v. State, 931 So.2d 1066 (Fla. 4th DCA 2006), a man flagged down a patrolling officer in a Wal-Mart parking lot and told him that he had seen a gray vehicle occupied by black males stopping intermittently, exiting their vehicle, and peering in the windows of vehicles parked in the parking lot. Id. at 1067. The man pointed the officer to the vehicle which was leaving the parking lot at the time, and the officer subsequently stopped the vehicle. Id.
*405 This court noted that, generally, anonymous informants are informants who provide information via telephone. Only two cases have determined that a face-to-face informant was the same as an anonymous informant: Solino v. State, 763 So.2d 1249 (Fla. 4th DCA 2000), and State v. Rewis, 722 So.2d 863 (Fla. 5th DCA 1998). Both Solino and Rewis involved a passing motorist who informed police officers that he suspected criminal activity and the officers’ failure to take the informant’s contact information or tag number. Thus, in both cases, the court concluded that for all practical purposes the tipster was an anonymous informant because his identity and his motives were unknown to the officers, and the officers had no way to contact the informant and no way to corroborate the information he provided. Rewis, 722 So.2d at 864; Solino, 763 So.2d at 1252.
This court distinguished J.P.N. from Re-wis and Solino on the grounds that, in J.P.N., the officer had a sixty to ninety second conversation with the informant during which the officer was able to judge the informant’s credibility and the officer also had knowledge of recent car burglaries in the subject parking lot. J.P.N., 931 So.2d at 1069. For these reasons, we held the tip was sufficiently reliable to warrant the stop. Id.
Here, there is no record evidence that the police officers had knowledge of or were concerned about drug dealing activity in the subject area. There is also no evidence regarding the length of the officers’ encounter with the informant. Therefore, the instant case is not controlled by J.P.N.
The indicia of reliability typically attributed to face-to-face encounters between police officers and informants do not exist in the present case where the police have no contact information for the informant and no way to locate him/her otherwise. Further, in the instant case, the officers did not know the motive of the informant. S/he could have been providing the information for his/her own pecuniary gain, may have had a falling out with McKelvin or may have even been acting on behalf of a competing drug dealer. Where the court in J.P.N. found record evidence to support its distinction of that case from Rewis and Solino, there is no evidence to materially distinguish the present case from those cases. Though the informant provided the police with extensive details regarding McKelvin and the suspicious activity, even anonymous tips “require detailed and specific information corroborated by police investigation” in order to establish the reasonable suspicion required for a stop. Pinkney v. State, 666 So.2d 590, 592 (Fla. 4th DCA 1996).
Without contact information or some other way to locate the informant if necessary, the informant in the present case is no different than an anonymous informant who provides detailed information over the phone to the police dispatch. The tipster approached the officers while they were engaged in an unrelated stop. There is no record evidence of how long the police interacted with the informant or whether they were able to discern his/her credibility during their encounter. As the police admitted they did not witness so much as a traffic infraction before initiating the stop, the officers did not have reasonable suspicion, and the trial court erred in denying the motion to suppress.

Reversed and Remanded.

WARNER and STEVENSON, JJ., concur.

. We recognize that in many cases involving an anonymous tipster, the officers observe the subject of the tip long enough to witness what they believe is illegal activity. Had the officers here watched the vehicle and seen a hand-to-hand transaction or some other activity similar to that described by the tipster in this case, that likely would have been corroborating evidence sufficient to warrant a subsequent stop.