MONACO, J.
 

 The petitioner, Department of Highway Safety and Motor Vehicles, seeks certiora-ri review of an order from the circuit court that reinstated the driving privileges of the respondent, Suann Ivey. Ms. Ivey’s driving privileges were suspended because after she failed a field sobriety test, she refused to submit to a test of either her breath alcohol or blood alcohol after being requested to do so by a law enforcement officer.
 
 See
 
 § 322.2615, Fla. Stat. (2010). It was the second time she had refused such a test.
 

 Although the suspension was upheld by a Department hearing officer after a formal review hearing, the circuit court reinstated her privileges on certiorari review. In the final analysis, the circuit court found that the arresting officer lacked a sufficient basis to initiate a stop of her vehicle. We conclude that the circuit court failed to apply the correct law in reversing Ms. Ivey’s suspension because only a founded suspicion is necessary to effectuate a DUI traffic stop, and the findings of the hearing officer clearly support the existence of that basis. We, therefore, grant the petition of the Department.
 

 The facts as found by the hearing officer are as follows:
 

 ... Officer Lorengo of the Maitland Police Department, responded to a dispatch call of a possibly impaired person attempting to drive away from the convenience store. A customer identified as Reid Mayback was exiting the store when he was approached by a woman identifying herself as Suzy, later identified as Suann Ivey, asked him to guide her to her home and she would follow him in her Range Rover. She stated that she had been drinking and was lost. After explaining to her that he could not let her drive her car, Mr. Mayback called his friend Joseph Chiaro to come
 
 *879
 
 help, as he was concerned for the woman’s safety. Mr. Mayback gave Mr. Chi-aro a description of Ms. Ivey and her vehicle. Mr. Chiaro drove to the store, en route he called 911 stating that his friend was there at the store where a female was attempting to leave the parking lot in a black Land Rover SUV and gave the tag number. Mr. Mayback stalled Ms. Ivey until the police and his friend arrived. Officer Lorengo approached the parking lot and observed the suspect vehicle, black Land Rover SUV with female matching the description standing next to the vehicle and she seemed to be staggering and having a difficult time maintaining her balance. Ms. Ivey entered the vehicle. Officer Lorengo approached on foot as Officer Plumlee pulled his patrol vehicle in behind the vehicle and activated his emergency lights. As Officer Lorengo looked inside the vehicle, he observed Suann Ivey identified by her driver license, seated in the drivers [sic] seat holding her keys in her right hand. Officer Lorengo detected the odor of an alcoholic beverage coming from Ms. Ivey’s breath and noticed that she had red and glassy eyes. Ms. Ivey submitted to Field Sobriety Exercises and performed poorly. Officer Lorengo placed Ms. Ivey under arrest and transported her to the Orange County DUI Testing Center. Ms. Ivey was read the implied consent and requested to submit to a breath test. Ms. Ivey initially agreed to submit to the test but later refused to do so. Ms. Ivey’s privilege to operate a motor vehicle was suspended for refusal to submit to a breath test.
 

 Ms. Ivey petitioned the circuit court for certiorari relief to quash the order of the Department.
 
 See
 
 § 322.2615(13), Fla. Stat. (2010). The circuit court issued the writ and reversed the suspension order finding that because the law enforcement officers “lacked probable cause or reasonable suspicion that the Petitioner was alcohol impaired and or in physical control of a motor vehicle while alcohol impaired when initiating the stop,” the stop of Ms. Ivey was unconstitutional. We conclude that the circuit court did not apply the correct law in granting the petition.
 

 A district court of appeal reviewing a circuit court decision on second-tier certiorari review may not conduct a
 
 de novo
 
 review of the record.
 
 See Fla. Power & Light Co. v. City of Dania,
 
 761 So.2d 1089, 1092 (Fla.2000);
 
 Dan Joint Venture III, LP v. Armstrong,
 
 929 So.2d 1186, 1186 (Fla. 4th DCA 2006). Rather, the district court’s review is limited to whether the lower court afforded procedural due process, and applied the correct law.
 
 Broward County v. G.B.V. Int’l, Ltd.,
 
 787 So.2d 838, 843-844 (Fla.2001);
 
 Haines City Cmty. Dev. v. Heggs,
 
 658 So.2d 523 (Fla.1995);
 
 City of Deerfield Beach v. Vaillant,
 
 419 So.2d 624, 626 (Fla.1982). Because the State does not claim that the circuit court did not afford it procedural due process, our function is limited to determining whether the circuit court applied the correct law.
 

 Before the Department can suspend a person’s license for refusing to submit to a blood or breath test, the law enforcement officer must have had probable cause to believe that the person had been driving or had physical control of a vehicle while intoxicated.
 
 See
 
 § 322.2615(7)(b), Florida Statutes (2010). Notably, however, neither the statute nor the case law requires an officer to have “probable cause” at the time he or she makes an investigative stop. Rather, only a founded suspension that the driver is intoxicated is needed for a stop.
 
 See Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968);
 
 State v. Carrillo,
 
 506
 
 *880
 
 So.2d 495 (Fla. 5th DCA 1987). A founded or reasonable suspicion necessary to support an investigatory stop is a suspicion that would warrant a man of reasonable caution to believe that a stop was appropriate. More importantly, for purposes of this case, a reasonable suspicion can be based solely on information provided by an ordinary citizen.
 
 See State v. Evans,
 
 692 So.2d 216 (Fla. 4th DCA 1997).
 
 See also State v. Reyes,
 
 680 So.2d 1092 (Fla. 3d DCA 1996). In the present case the tips provided by Mr. Mayback and Mr. Chiaro were sufficient to create a reasonable suspicion.
 

 Probable cause and reasonable suspicion are two different standards. While the officers needed probable cause to arrest Ms. Ivey and suspend her license, they only needed a reasonable suspicion to make the initial stop, and it is the initial stop that is here in question. Yet the circuit court found that the law enforcement officers “lacked probable cause or reasonable suspicion” that Ms. Ivey was in physical control of a motor vehicle while alcohol impaired at the time they initiated the stop. The analysis of the court and the cases cited by it to support its determination, however, are not congruent with the facts of this case, and do not support the issuance of the writ by the trial court.
 

 In concluding that the stop was invalid the trial court relied upon four cases,
 
 Florida v. J.L.,
 
 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000);
 
 Baptiste v. State,
 
 995 So.2d 285 (Fla.2008);
 
 McKelvin v. State,
 
 53 So.3d 401 (Fla. 4th DCA 2011); and
 
 Simms v. State,
 
 51 So.3d 1264 (Fla. 2d DCA 2011). These cases, however, are clearly distinguishable from the facts of the case before us.
 
 J.L.
 
 involved a “stop and frisk” after an
 
 anonymous
 
 caller, who did not identify himself in any manner, reported to the police that a young man standing at a bus stop was carrying a weapon. The United States Supreme Court held that an anonymous informant without more lacked sufficient indicia of reliability to establish reasonable suspicion for a stop and frisk.
 
 Baptiste
 
 also involved a “stop and frisk” after an
 
 anonymous
 
 caller reported that a black male with a white t-shirt was waving a firearm in front of a super market.
 

 Likewise,
 
 McKelvin
 
 involved an “unidentified
 
 anonymous
 
 source” who informed the police that a black male in a burgundy or red Dodge was conducting a narcotics deal at a motel. The court there held that the stop was illegal because “without contact information or some other way to locate the informant if necessary,” the tipster was an anonymous informant, and his information alone could not provide the police with reasonable suspicion. 53 So.3d at 405.
 

 Finally,
 
 Simms
 
 once again involved an
 
 anonymous
 
 tip received at 10:30 p.m. on Halloween stating that a thin, dark-haired, six-foot-tall man wearing a flannel shirt and pants was trying to open car doors in a particular block of a residential area. The court there found the anonymous tip lacked sufficient indicia of reliability to establish reasonable suspicion to make a
 
 Terry
 
 investigatory stop on suspicion of attempted burglary of automobiles since the officers did not observe him trying to open car doors, but only observed him “pop up” from between two parked cars. The court noted that it was necessary for the police officers to corroborate the tip through their own observations.
 

 Thus all four cases on which the circuit court relied in granting the writ involved criminal activities other than DUI, and all involved anonymous callers who declined to identify themselves to the police, unlike the tipsters in the case now before us. Florida courts have recognized that valid safety concerns can warrant a brief inves
 
 *881
 
 tigative stop by law enforcement officers to determine whether a driver is intoxicated using a somewhat more relaxed standard than that required for other crimes.
 
 See State, Dep’t of Highway Safety and Motor Vehicles v. DeShong,
 
 603 So.2d 1349, 1352 (Fla. 2d DCA 1992);
 
 see also Ellis v. State,
 
 755 So.2d 767, 769 (Fla. 4th DCA 2000) (citing
 
 DeShong,
 
 603 So.2d at 1349). In
 
 DeShong,
 
 the second district court found that the circuit court had applied the incorrect law when it reversed a suspension order because “it applied the ‘probable cause’ standard required for an arrest instead of the ‘reasonable suspicion’ standard needed to justify a traffic stop.” 603 So.2d at 1351. The district court explained:
 

 In order to effect a valid stop for DUI, the officer need only have a “founded suspicion” of criminal activity. Thereafter, the probable cause needed to arrest or to suspend a license for DUI may be based upon evidence obtained during the standard procedures following a valid traffic stop.... The courts of this state have recognized that a legitimate concern for the safety of the motoring public can warrant a brief investigatory stop to determine whether a driver is ill, tired, or driving under the influence in situations less suspicious than that required for other types of criminal behavior.
 

 Id.
 
 (citations omitted).
 

 In the present case the lower court applied the incorrect law because its analysis reflects that it applied the probable cause standard to the initial traffic stop, rather than the reasonable suspicion standard, despite its ambiguous conclusion in the order granting Ms. Ivey’s petition. In addition, the court improperly held that Mr. Chiaro and Mr. Mayback were anonymous tipsters and that their information had to be corroborated before it could justify a traffic stop.
 

 The correct law in this regard, however, is reiterated in
 
 Evans.
 
 There, an employee working at a fast-food drive-thru called 911 after waiting on a patron who seemed intoxicated and smelled of alcohol. The police arrived, and stopped a vehicle matching the description and tag number given to the dispatcher as it was pulling out of the drive-thru. The driver was ultimately arrested for DUI, possession of marijuana with intent to sell, and resisting arrest. The trial court suppressed the evidence in the case on grounds that the information used to justify the stop was an uncorroborated, anonymous tip. The appellate court reversed, finding that the tipster in the case was not anonymous as she provided her name, location and occupation to the police; the court even noted that case law “support[s] the proposition that an informant’s actual name need not be known so long as her identity is readily discoverable.”
 
 Evans,
 
 692 So.2d at 219. Rather, the court concluded that she was a “citizen-informant, whose information is at the high end of the tip-reliability scale” because she was “motivated not by pecuniary gain but by the desire to further justice.”
 
 Id.
 
 Such information is presumed reliable, and needs no corroboration. The court held the trial court erred in relying on case law that addressed anonymous informants as the tipster was not anonymous.
 

 In the present case Mr. Chiaro and Mr. Mayback were clearly not anonymous, as the police were later able to contact them and get their written statements.
 
 See Solino v. State,
 
 763 So.2d 1249 (Fla. 4th DCA 2000). While it is true that the officers did not know the identity of the informants at the time they made the stop, the information given to the dispatcher was constructively imputed to the arresting officers.
 
 *882
 

 See Evans,
 
 692 So.2d at 218;
 
 see also Berry v. State,
 
 493 So.2d 1098 (Fla. 4th DCA 1986). Accordingly, we conclude that the officers had a founded suspicion to stop Ms. Ivey.
 

 It appears, therefore, that the circuit court erred in failing to impute the knowledge of the dispatcher to the two arresting officers, and in failing to conclude that the officers acted upon a founded suspicion. As in
 
 Evans,
 
 the court applied the incorrect law in connection with this investigative stop when it relied on cases involving anonymous informants. Because the circuit court applied the incorrect law, a miscarriage of justice resulted, and for that reason we grant the State’s petition and quash the decision of the circuit court that reinstated Ms. Ivey’s driving privileges.
 

 PETITION GRANTED.
 

 GRIFFIN and JACOBUS, JJ., concur.