WELLS, Chief Judge.
The State of Florida appeals from an order suppressing physical evidence obtained during an investigatory stop. Because we find reasonable suspicion existed to support the stop, we reverse.
Officer Timothy Jackson, the arresting officer, was the sole witness to testify at the suppression hearing below. According to Officer Jackson, he was off duty and out of uniform when, on February 12, 2012, he pulled his marked police car into a McDonald’s parking lot. As he neared the restaurant, he was approached by an individual, described as a Latin male, who stepped in front of Officer Jackson’s moving car forcing Officer Jackson to stop. This individual, who was talking on a cell phone when he stepped before Officer Jackson’s police car, appeared to Officer Jackson to be “agitated and excited.” As soon as Jackson stopped his car, the man told Jackson that “somebody [had] pulled a gun on [him] in the bathroom at McDonald’s.”
Fearing a hoax, Officer Jackson demanded to know to whom this individual was speaking and upon being told that it was “the [911] dispatcher,” Officer Jackson took possession of the phone and confirmed that dispatch was on the line taking a robbery report. At this juncture, Officer Jackson took over the investigation and was told by the individual who flagged him down, that a black man wearing a black hoodie and red shorts, accompanied by another black man wearing a white t-shirt and blue jeans, had pulled a gun on him in the McDonald’s restaurant. The entire *345 conversation between the officer and the individual lasted “at least two minutes.”
Upon learning that these events had occurred only a few minutes before, and finding the individual to be credible, Officer Jackson decided to leave at once in an attempt to locate the assailants. Officer Jackson made no attempt to obtain the name and address of the man making the report, asking only that he remain at the McDonald’s while Officer Jackson went in pursuit.
After searching for only a few minutes, Officer Jackson spotted two individuals just a few hundred yards from the McDonald’s who matched the descriptions given to him. Jackson parked and got out of his vehicle, and based on the report that at least one of the assailants was armed, approached with his gun drawn. On reaching the two, Officer Jackson told one of them (T.S.), that he did not “know whether or not you’re the actual person or not, but someone just claimed that somebody pulled a gun and you meet the description. For your safety and for my safety let me see your hands.” T.S. did not respond. Officer Jackson then asked T.S. at least three more times to show his hands and received no response. Officer Jackson finally asked, “Do you speak English, do you speak Spanish, do you speak Creole, are you deaf, are you dumb[?]” Other than “swaying his body and walking] back and forth,” T.S. made no response to any of these demands. Finally, Officer Jackson told T.S., “I’m going to tell you one more time if you do not comply I’m going to blow your head off.” This time T.S. took his hands out of his pockets and put them in the air. T.S. then acknowledged that he spoke English and stated that he had a handgun in his pocket. At this point, Officer Jackson retrieved a .38 snub nose pistol with the hammer cocked from T.S.’s pocket and called for backup.
Officer Jackson estimated that approximately thirty to thirty-five minutes had elapsed from the time he first interacted with the informant and when he returned to the McDonald’s restaurant. But, by the time he returned, the individual who had reported the attempted robbery had left.
The State charged T.S. with carrying a concealed firearm and with possession of a firearm by a minor. Relying primarily on Baptiste v. State, 995 So.2d 285 (Fla.2008), T.S. moved to suppress the firearm claiming that the stop during which the gun was seized was illegal because it was based solely on an unreliable anonymous tip. The trial court agreed and ordered the evidence suppressed. Because the individual who flagged Officer Jackson down at the McDonald’s restaurant was a citizen informant whose information was sufficiently reliable to support the investigatory stop conducted by Officer Jackson, we reverse. See Williams v. State, 721 So.2d 1192, 1193 (Fla. 1st DCA 1998) (confirming that review of a trial court’s application of the law to the facts is de novo).
“Generally, ‘the Fourth Amendment to the United States Constitution prohibits state actors from making searches or seizures of the person in the absence of probable cause.’ ” United States v. Heard, 367 F.3d 1275, 1278 (11th Cir.2004) (quoting United States v. Dunn, 345 F.3d 1285, 1288 (11th Cir.2003), cert. denied, 542 U.S. 906, 124 S.Ct. 2837, 159 L.Ed.2d 270 (2004)). However, in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court recognized an exception to the probable cause requirement where a minimally intrusive search and seizure — an investigatory stop — is involved. These minimally intrusive searches and seizures need not be based on probable cause, but may be based instead only on an officer’s reasonable, articulable suspicion that criminal ac *346 tivity is afoot. Id. at 30, 88 S.Ct. 1868; United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (stating that “the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity ‘may be afoot,’ even if the officer lacks probable cause”); see also Illinois v. Wardlow, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (confirming that under Terry, “an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot”).
Reasonable suspicion, a less demanding standard than probable cause, may “be established with information that is different in quantity or content than that required to establish probable cause, [and] ... can arise from information that is less reliable than that required to show probable cause.” Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). In Baptiste, the Florida Supreme Court addressed whether an anonymous report, a tip, of criminal activity, uncorroborated by any evidence of illegal activity, was legally sufficient (that is rehable enough to give rise to the reasonable suspicion necessary) to support an investigatory stop. In determining that it was not, the court acknowledged that while information provided to law enforcement from some sources about criminal activity may be sufficiently reliable to establish the quantum of suspicion necessary to support an investigatory stop, information from other sources may not. Baptiste, 995 So.2d at 291. More specifically, the court noted that “the reliability of a tip which alleges illegal activity varies based upon whether the tip is truly anonymous, such as an anonymous telephone call, or whether it is offered by a ‘citizen informant’ who approaches the police in person to report criminal activity. A tip from a citizen informant falls at a higher end of the reliability scale.” Id.
This “hierarchy” or sliding scale of reliability depends, as the Supreme Court further confirmed, on a number of factors relating to the ability to assess the motivation, credibility and potential accountability of the person making the report:
First, a citizen informant may be motivated not by pecuniary gain, but by the desire to further justice. Second, unlike an anonymous tipster, a witness who directly approaches a police officer may be held accountable for false statements. Third, a face-to-face tip may be viewed as more reliable because the officers who receive the tip have the opportunity to observe the demeanor and evaluate the credibility of the person offering the information. Fourth, a witness who approaches the police in person may subject himself or herself to potential reprisal from the defendant, thereby rendering the tip more reliable than an anonymous tip.
[[Image here]]
On the other hand, a truly anonymous tip has been consistently held to fall on the low end of the reliability scale, primarily because the veracity and reliability of the tipster is unknown.
Id. at 291-292.
The information provided in this case did not come from a truly anonymous telephone tip but came during a face-to-face interaction between a citizen and the authorities. First, and as T.S. acknowledges here, the circumstances surrounding the informant’s actions do not suggest that he was motivated by pecuniary gain. Second, while the police officer involved in this interaction failed to secure the informant’s identifying information, at no point did the informant indicate a desire to remain anonymous so as to remain unaccountable for any false statements. Rather, the informant’s actions in reporting the robbery *347 attempt to both the 911 dispatcher and Officer Jackson confirm his willingness to be held accountable for making not just one, but two, reports. Third, T.S. does not question the fact that the arresting officer had ample opportunity to observe the informant’s demeanor during their two minute conversation to assess his credibility. Indeed, the officer’s ability to independently confirm the informant’s representation that he was attempting to make a police report of the criminal activity which he stated had occurred, combined with the fact that the officer was quickly able to locate the described assailants nearby and at a location generally suggested by the informant, confirmed the informant’s credibility and the reliability of the information provided. Thus, while Officer Jackson did not secure identifying information from the informant, the informant was not truly an anonymous tipster but a citizen informant instead. See generally Wallace v. State, 964 So.2d 722, 728 (Fla. 2d DCA 2007) (recognizing that when considering whether a tipster should be treated as a citizen informant, a deficiency in one factor may be compensated for by a strong showing as to another indicia of reliability); see also A.M. v. State, 24 So.3d 731, 733 (Fla. 3d DCA 2009) (finding a tipster to be a citizen informant where the tipster’s anonymous call to the police was followed by a face-to-face encounter between the tipster and the police prior to an investigatory stop); J.P.N. v. State, 931 So.2d 1066, 1069 (Fla. 4th DCA 2006) (recognizing that an anonymous face-to-face tip is presumed to be inherently more reliable than an anonymous telephone tip, and finding a tipster to be a citizen informant, in part because the officer conversed with the informant “for sixty .to ninety seconds face-to-face and had an opportunity to assess his credibility”); compare McKelvin v. State, 53 So.3d 401, 405 (Fla. 4th DCA 2011) (distinguishing J.P.N. and finding a face-to-face tip not reliable because there was “no evidence regarding the length of the officers’ encounter with the informant” during which the officer could judge the informant’s credibility).[1]
Because the informant in this case was a citizen informant, reasonable suspicion existed to conduct an investigatory stop and the subsequent search of T.S. was legal. Accordingly, we reverse the order under review and remand for further proceedings.

. In coming to this conclusion, we reject the argument made below that this case is similar to A.W. v. State, 82 So.3d 1136 (Fla. 4th DCA 2012), McKelvin v. State, 53 So.3d 401 (Fla. 4th DCA 2011), and State v. Rewis, 722 So.2d 863 (Fla. 5th DCA 1998). As the opinion in A.W. notes, the informants who both called the police and met with them face-to-face left the area after identifying the defendant "[wjishing to remain anonymous.” A.W., 82 So.3d at 1137. Similarly, in McKelvin, the informant ‘‘wanted to remain anonymous.” McKelvin, 53 So.3d at 403. And in Rewis, the totality of the circumstances reported in the opinion demonstrate no basis on which the face-to-face information provided could have been determined to be reliable. Rewis, 722 So.2d at 864.