[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 30, 2004
THOMAS K. KAHN
CLERK

_____

No. 03-14811

_____

D. C. Docket No. 02-00526-CR-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DARIUS HEARD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(April 30, 2004)**

Before BIRCH, MARCUS and BRUNETTI[*], Circuit Judges.

BIRCH, Circuit Judge:

_____

[*]Honorable Melvin Brunetti, United States Circuit Judge for the Ninth Circuit, sitting by designation.

This appeal presents an issue of first impression in this circuit:  when does an anonymous tip give rise to reasonable suspicion sufficient to justify a Terry[1] stop?  The Supreme Court, in Florida v. J.L., 529 U.S. 266, 120 S. Ct. 375 (2000), held that an anonymous tip, without sufficient indicia of reliability, will not establish reasonable suspicion.  Distinguishing J.L., the district court here denied defendant-appellant's motion to suppress evidence seized and statements made during a Terry stop-and-frisk.  We AFFIRM.

## I. BACKGROUND

On 25 October 2000, at about 5:00 PM, MARTA[2] police officer C.D. Gore was patrolling the Ashby Street MARTA station when he was informed by MARTA patrons that a fight was in progress inside the station.  Gore called for back-up, as required, and then went to investigate the fight.  Inside the station, Gore observed a woman yelling at defendant-appellant, Darius Heard, and demanding fifty dollars.  Gore stated, "What's going on?  Can I help you?" and the woman responded that Heard owed her fifty dollars.  R2 at 17.  Heard admitted to Gore that he owed her money and paid the woman after Gore suggested that Heard handle the situation "in a professional . . . manner."  Id. at 6.  Gore encouraged

---

[1] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868 (1968).

[2] MARTA is metro Atlanta's rapid transportation system.

2

Heard to pay the woman because he thought "[t]hey knew each other . . . because . . . you don't give money to just somebody you don't know." Id. at 7. After the exchange, Heard went towards the elevators, while Gore and the woman walked away in the same direction.

As Gore and the woman were walking away, the woman informed Gore that Heard was carrying a weapon. Gore turned towards Heard, made eye contact, and, while ordering Heard to "get his hands up," approached Heard by the elevator. Id. at 8. According to Gore, Heard looked "stunned" that Gore was coming towards him, id., but complied with Gore's order. As Gore was approaching Heard, he instructed the woman to remain at the station to give a statement, but she jumped on an arriving MARTA train, never to be seen by Gore again. Gore later testified that, because the woman left the station, he thought that her information about Heard carrying a weapon might be unreliable.

Nevertheless, to protect his own safety and the safety of MARTA patrons, Gore placed Heard in handcuffs and performed a Terry frisk.[3] During the pat-down, Gore felt a hard, metal object in the front of Heard's waistband. Gore asked Heard, "Is this something I should know about?," id. at 9, and Heard responded that it was "nothing," id. at 10. Gore then grabbed the handle of the hard object

---

[3]According to Gore's testimony, he had already decided to stop and frisk Heard before he began to question the woman's reliability. R2 at 39.

3

and discovered that it was a Rossi .38 Special. At that point, Heard stated that he "was holding [the weapon] for his cousin." Id.

Heard was indicted for possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924(a), and subsequently moved to suppress the weapon obtained and any statements made during the Terry stop-and-frisk. Heard argued that, under Florida v. J.L., the woman's anonymous tip that he was in possession of a weapon was unreliable and, therefore, Gore had no reasonable suspicion to stop or frisk him. The government responded that the woman's tip was more credible and reliable than the anonymous phone call at issue in J.L. because she spoke face-to-face with Gore.

The magistrate judge agreed with the government and issued a report and recommendation that the motion to suppress be denied. The magistrate judge concluded that Gore had a reasonable suspicion that Heard was carrying a weapon for three primary reasons: (1) because Gore's encounter with the woman was face-to-face, Gore was able to evaluate the reliability of his informant before receiving the tip; (2) the tip was timely and specific; and (3) Gore had a reasonable belief that the informant and Heard had a relationship after the two argued in close proximity and exchanged money. And, although the magistrate judge determined

that the woman's credibility was reduced when she ran, he also determined that it was not "obliterate[d.]" R1-26 at 15.

Heard objected to the magistrate judge's report and recommendation, arguing, inter alia, that J.L. was dispositive. The district court adopted the magistrate judge's report and recommendation over Heard's objections and denied the motion to suppress. Heard subsequently agreed to a conditional guilty plea, reserving the right to appeal the denial of his motion to suppress. The district court then sentenced Heard to fifty-four months of imprisonment, and Heard now appeals the district court's denial of his motion to suppress.

## II. DISCUSSION

"A district court's ruling on a motion to suppress presents a mixed question of law and fact." United States v. Chanthasouxat, 342 F.3d 1271, 1275 (11th Cir. 2003) (citation omitted). We review the district court's findings of fact for clear error and its application of law to the facts de novo, viewing all facts in the light most favorable to the party that prevailed in the district court. Id.

Generally, "the Fourth Amendment to the United States Constitution prohibits state actors from making searches or seizures of the person in the absence of probable cause." United States v. Dunn, 345 F.3d 1285, 1288 (11th Cir. 2003), petition for cert. filed, __ U.S.L.W. __ (U.S. Mar. 4, 2004) (No. 03-9323).

5

However, Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868 (1968), announced an exception to the probable cause requirement: "minimally intrusive searches and seizures of the person are permissible when a law enforcement officer has an objectively *reasonable suspicion* that 'criminal activity may be afoot.'" Dunn, 345 F.3d at 1289 (emphasis added).

Reasonable suspicion, while dependent upon the "totality of the circumstances," including both the content of the information and its reliability, "can arise from information that is less reliable than that required to show probable cause." Alabama v. White, 496 U.S. 325, 330, 110 S. Ct. 2412, 2416 (1990) (citation omitted). Even an anonymous tip can, under certain circumstances, give rise to reasonable suspicion, as long as the information provided contains "sufficient indicia of reliability to justify the investigatory stop." Id. at 332, 110 S. Ct. at 2417. J.L. confirmed that the reliability of the tip—tested by the reliability of the tipster—is the key to whether an anonymous tip can provide an officer with a reasonable suspicion sufficient to permit a Terry stop.

In this case, considering the "totality of the circumstances," we must decide whether the anonymous face-to-face tip given to Gore contains "sufficient indicia of reliability" such that Gore had a reasonable suspicion to stop and frisk Heard. We conclude that the tip was sufficient and that Gore properly performed the

6

protective pat-down.  We begin our analysis with a consideration of the Supreme

Court's recent decision in Florida v. J.L., and then discuss why the anonymous tip

in this case is reliable.

A.  *Florida v. J.L.*

This is the first opportunity we have had to interpret J.L. since our decision

in United States v. Holloway, 290 F.3d 1331 (11th Cir. 2002), cert. denied, 537

U.S. 1161, 123 S. Ct. 966 (2003).[4]  In J.L., an anonymous telephone caller

informed police that a young black man, waiting at a particular bus stop and

wearing a plaid shirt, was carrying a gun.  529 U.S. at 268, 120 S. Ct. at 1377.  At

some later time, police proceeded to the bus stop, where they observed three black

men hanging out.  One of the men, J.L., was wearing a plaid shirt.  The anonymous

call was the police's only grounds for suspicion of illegal activity.  There was no

visual evidence of a firearm on J.L.'s person, nor did he make any suspicious

moves.  Nevertheless, the police approached him, ordered him to put his hands up,

frisked him, and found a gun in his pocket.  Id.

---

[4]In United States v. Holloway, 290 F.3d 1331 (11th Cir. 2002), we upheld a warrantless search based on emergency circumstances even though the police were responding to information given by an anonymous telephone informant.  Id. at 1334.  We distinguished J.L., finding that the emergency circumstances permitted the police to conduct a search based solely on anonymous information.  Id. at 1338-39.  Thus, because we focused on the emergency exception, the decision is not on-point in this case.

Reviewing the anonymous tip, the Court identified the primary reason why allowing an anonymous tip to serve as the sole basis for a <u>Terry</u> stop is problematic: reliability. <u>Id.</u> at 270, 120 S. Ct. at 1378. Anonymous tips provide little or no opportunity for law enforcement officers to test the informant's truthfulness or the basis of his knowledge. <u>Id.</u> The Court concluded that the anonymous tip in <u>J.L.</u>—lacking sufficient indicia of reliability—was insufficient to establish reasonable suspicion. <u>Id.</u> at 274, 120 S. Ct. at 1380. Unlike the anonymous tip in <u>J.L.</u>, however, officer Gore had an opportunity to judge the reliability of the face-to-face informant in this case.

B. <u>Reliability of the Tip in this Case</u>

A face-to-face anonymous tip is presumed to be inherently more reliable than an anonymous telephone tip because the officers receiving the information have an opportunity to observe the demeanor and perceived credibility of the informant. <u>See, e.g.</u>, <u>U.S. v. Valentine</u>, 232 F.3d 350, 354 (3d Cir. 2000) (reasoning that face-to-face anonymous tip is more reliable than anonymous telephone tip because officers can judge the informant's reliability); <u>U.S. v. Christmas</u>, 222 F.3d 141, 144 (4th Cir. 2000) (citing cases supporting the proposition that face-to-face anonymous informants are more reliable than anonymous telephone tipsters for same reason); <u>United States v. Sierra-Hernandez</u>,

8

581 F.2d 760, 763 (9th Cir. 1978) ("Unlike a person who makes an anonymous telephone call, this informant confronted the agent directly.").

In this case, Gore had an opportunity to judge the demeanor and credibility of the unknown woman. Gore stated that the woman seemed frightened when she reported Heard's weapon, and Gore reasonably presumed that Heard and the unidentified woman had some sort of relationship—they were arguing over money and Heard paid the woman the amount she demanded. See, e.g., Christmas, 222 F.3d at 144 (police reasonably concluded that informant, who lived two doors down from suspect, had knowledge of criminal activities occurring at her neighbor's home). Thus, reasoning that Heard knew the woman, Gore could reasonably conclude that she would have reliable information about whether Heard possessed a weapon.

Heard, on the other hand, contends that Gore did not have reasonable suspicion to search him because Gore had concluded that the informant was unreliable after she fled the MARTA station. Gore testified, however, that he had decided to frisk Heard before the woman ran. The reliability of a tip is considered in light of all relevant circumstances, which include—but is not limited to—a consideration of whether the officer can track down the tipster again.[5] In this case,

_____

[5]United States v. Sierra-Hernandez, 581 F.2d 760 (9th Cir. 1978), for example, involved a factual scenario very similar to the facts in this case. The anonymous tipster in Sierra-

although the unknown woman fled the MARTA station, because she and Heard apparently knew each other, she may have subjected herself to reprisal from Heard based on the tip she gave to Gore—which makes her more reliable. See, e.g., Christmas, 222 F.3d at 144 (informant who notified police that her neighbor was involved in illegal activity could have "exposed herself to the risk of reprisal . . . [from] someone associated with the illegal activity."). Considering the totality of the circumstances in this case, Gore reasonably concluded that the unknown woman's tip was reliable.

Heard also argues that Gore had no independent reason to suspect him of criminal activity because he looked "stunned" when asked to put his hands up and complied with Gore's instructions. Heard's reaction to Gore, however, does not diminish the reliability of the tip provided by the unknown woman. While a suspect's *adverse* reaction to police may independently *corroborate* information provided by an anonymous informant, a *compliant* reaction does not correspondingly undermine the tip's reliability.

Hernandez was driving in an automobile along the United States-Mexico border when he stopped to provide a border patrol agent with information related to nearby drug smuggling. 581 F.2d at 762. The tipster did not provide his name or contact information before the agent focused his attention on investigating the potential criminal activity. Id. The Ninth Circuit, when analyzing the reliability of the anonymous tip, considered the fact that the tipster could have been identified based on a description of his car. Id. at 763. This factor was not determinative, however: "whether the information is sufficient to justify a stop must be evaluated with reference to the facts of each case, for there is no per se rule of reliability." Id.

10

### III. CONCLUSION

Heard objected to the admissibility of evidence seized and statements made during a <u>Terry</u> stop-and-frisk conducted after a MARTA officer Gore received an anonymous face-to-face tip that Heard was carrying a concealed weapon. We conclude that a tip given by a face-to-face informant—with, as here, sufficient indicia of reliability—may provide an officer with a reasonable suspicion sufficient to permit a protective pat-down. In this case, the anonymous tip was sufficiently reliable for Gore to form a reasonable suspicion sufficient to justify the investigatory stop. Accordingly, the district court's judgment denying Heard's motion to suppress is AFFIRMED.