[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10841
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cr-00326-LSC-JHE-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARTEZ LAMAR JONES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(October 12, 2018)

Before MARTIN, JILL PRYOR, and GRANT, Circuit Judges.

PER CURIAM:

Martez Jones appeals his conviction for possession of a firearm by a

convicted felon, challenging the denial of his motion to suppress evidence

discovered during the stop and frisk that led to his arrest. Jones contends that the arresting officer lacked sufficient information to form a reasonable suspicion that Jones was involved in the commission of a crime, and therefore had insufficient justification to stop and search him. Finding no error in the district court's denial of the motion to suppress, we affirm.

I.

Officer Rex Newton of the Anniston, Alabama police department was patrolling a residential area near Cobb Avenue and 15th Street at about 12:45 a.m. when he heard several gunshots. The neighborhood was known to Anniston police as a high-crime area with frequent incidents of violence, including drive-by shootings. Officer Newton drove in the direction of the shots and sent a call out over the police radio advising other officers about the gunfire and to be on the lookout for the shooter.

As he approached Cobb Avenue, Officer Newton observed a woman in an alley. She was breathing heavily and crying, and Officer Newton could see that she was very upset. Another police officer who responded to the shooting recognized the woman as a drug user he had met before, but she did not appear to be intoxicated that night. The woman told Officer Newton that a "younger" African-American male wearing blue pants and a light-colored, possibly gray t-shirt had just shot at her and then run away, heading west toward Cobb Avenue.

2

While Officer Newton was talking to the woman, her husband came out of their nearby residence and told him that the shooter "had shot up his house." The husband also appeared to be very upset and angry about the shooting. The couple later told police that they would like to remain anonymous and did not wish to press charges.

Officer Newton followed up on his earlier radio alert by broadcasting both the female informant's description of the shooter and the direction of the shooter's movement over the police radio. Officer Michael Demiani-Pinto heard Officer Newton's radio calls and drove toward Cobb Avenue looking for the shooter.

About five minutes after Officer Newton's initial report of gunshots, Officer Pinto saw Jones crossing Cobb Avenue at 16th Street, two or three blocks from where the shots had been fired. Jones fit the description given by the female informant: he is an African-American male in his early twenties, and he was wearing blue pants and a gray t-shirt. When Officer Pinto saw him, Jones was looking over his shoulders and appeared to be sweating. No one else was around.

Officer Pinto called out to Jones, who walked away through a hedge toward a nearby house. Officer Pinto then instructed Jones to stop and show his hands, telling him that he needed to search him for weapons, and that he would explain the reason for the stop in a moment. Jones lifted up his shirt and turned around, saying that he had no weapons. But when Officer Pinto approached and frisked

3

him, he felt a metal object near Jones's ankle, which turned out to be a 9mm pistol. Officer Pinto arrested him; due to his prior felony convictions, Jones was later indicted for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).

Jones filed a motion to suppress the firearm found during the frisk, arguing that the information known to Officer Pinto at the time of the stop was insufficient under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968) to justify detaining and searching him. The district court denied the motion to suppress, finding that "Officer Pinto had reasonable cause to believe criminal activity was underway." Jones entered a conditional guilty plea, reserving the right to appeal the denial of his motion to suppress.

## II.

When reviewing the denial of a motion to suppress, we review the lower court's findings of fact for clear error and its application of the law *de novo*. *United States v. Jordan*, 635 F.3d 1181, 1185 (11th Cir. 2011). We construe the facts in the light most favorable to the prevailing party below and give substantial deference to the district court's explicit and implicit credibility determinations. *United States v. Lewis*, 674 F.3d 1298, 1303 (11th Cir. 2012).

## III.

A brief seizure or investigative detention is permissible under the Fourth Amendment "if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585 (1989) (quoting *Terry*, 392 U.S. at 30); *United States v. Matchett*, 802 F.3d 1185, 1192 (11th Cir. 2015). Reasonable suspicion is a "commonsense, nontechnical" concept that must be assessed on a case-by-case basis. *Ornelas v. United States*, 517 U.S. 690, 695-96, 116 S. Ct. 1657, 1661 (1996). The level of suspicion required to justify a brief investigative detention is less than the "fair probability" of discovering contraband or evidence of a crime needed to establish probable cause, and "considerably less than proof of wrongdoing by a preponderance of the evidence." *Sokolow*, 490 U.S. at 7. Still, the detaining officer must be able to articulate facts providing at least a "'minimal level of objective justification' for making the stop." *Id.* (citation omitted); *United States v. Gordon*, 231 F.3d 750, 754 (11th Cir. 2000).

In evaluating Jones's argument that Officer Pinto lacked reasonable suspicion to stop him, the question is not whether he as the detaining officer actually had the required level of suspicion. Rather, the question is "whether, given the circumstances, reasonable suspicion objectively existed." *United States v. Nunez*, 455 F.3d 1223, 1226 (11th Cir. 2006) (citation omitted). And when

multiple officers are involved in the investigation of a crime, we may look to the collective knowledge of the officers to determine whether the detaining officer's stop was justified. *See United States v. Hensley*, 469 U.S. 221, 232-33, 105 S. Ct. 675, 682 (1985); *Nunez*, 455 F.3d at 1226; *United States v. Williams*, 876 F.2d 1521, 1524 (11th Cir. 1989).

Jones claims that Officer Pinto did not have reasonable suspicion that criminal activity had occurred because he could not articulate the specific law that had been violated. But there is no requirement for an officer to cite a statute or name a crime in order for the district court to conclude that reasonable suspicion of criminal activity objectively existed. Here, Officer Pinto was alerted by Officer Newton's radio call that several shots had been fired in the middle of the night in a residential area known for drug crimes and gun violence. He was entitled to act on the basis of that broadcast even though it did not include the full details of the crime that was being investigated. *See Hensley*, 469 U.S. at 231–32. And even without knowing the full content of the witnesses' statements to Officer Newton, Officer Pinto may have reasonably inferred from the location and the time of night that the reported gunshots warranted further investigation because they were likely related to the commission of a crime.

Officer Pinto's suspicion that Jones may have been involved in the crime described in the radio broadcast was also objectively reasonable. It is true that an

6

individual's presence in a high-crime area is not, standing alone, enough to provide reasonable suspicion to support a *Terry* stop, but such presence can be a relevant factor in determining whether the circumstances were "sufficiently suspicious to warrant further investigation." *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S. Ct. 673, 676 (2000); *United States v. Hunter*, 291 F.3d 1302, 1306 (11th Cir. 2002). Additionally, officers can consider proximity to known or suspected criminal activity, along with nervous or evasive behavior. *Hunter*, 291 F.3d at 1306; *Gordon*, 231 F.3d at 756.

Each of those factors is present here. When Officer Pinto encountered Jones minutes after the shots were fired, within only a few blocks of the shooting in a high-crime neighborhood, he was looking nervously over his shoulders and sweating. And Officer Pinto could also see that Jones matched the description of the shooter that had been broadcast over the radio, providing additional justification for a brief investigative stop. *See United States v. Gibson*, 64 F.3d 617, 622–23 (11th Cir. 1995).

Jones's challenge to the reliability of that description and the other information provided by the witnesses to the shooting cannot save his claim. To be sure, reasonable suspicion depends on both the quantum of information known to police and its reliability. *See Navarette v. California*, 572 U.S. 393, 397, 134 S. Ct. 1683, 1687 (2014). But in many circumstances an informant's tip can be

7

sufficiently reliable to give rise to reasonable suspicion for a *Terry* stop—including where, as here, "the victim of a street crime seeks immediate police aid and gives a description of [her] assailant." *Adams v. Williams*, 407 U.S. 143, 147, 92 S. Ct. 1921, 1924 (1972).

That standard does not change when the informant is anonymous; the information provided can still justify an investigative stop so long as sufficient indicia of reliability exist. *United States v. Heard*, 367 F.3d 1275, 1278 (11th Cir. 2004). Where an officer can observe the demeanor of an anonymous informant and judge her credibility, it weighs in favor of finding the informant's tip sufficiently reliable. *Id.* at 1279. That happened here. And in any event, these witnesses (one of whom was known to at least one officer at the scene) did not ask to remain anonymous until after Jones was arrested; at the time they provided information to Officer Newton they were simply crime victims reporting events to the police, not "anonymous informants" as Jones suggests.

The facts of this case plainly support the reasonable suspicion that Jones was involved in criminal activity. Accordingly, we conclude that Officer Pinto's brief investigative detention did not violate Jones's Fourth Amendment rights, and that the district court did not err in denying Jones's motion to suppress.

**AFFIRMED.**

8