[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14657
Non-Argument Calendar

_____

D.C. Docket No. 1:19-cr-20365-RNS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GABRIEL SAMAR MARTINEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 1, 2021)

Before NEWSOM, ANDERSON, and EDMONDSON, Circuit Judges.

PER CURIAM:

Gabriel Martinez appeals his conviction after pleading guilty to possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). On appeal, Martinez challenges the district court's denial of his motion to suppress the gun that was seized during a warrantless search of his car during a traffic stop. No reversible error has been shown; we affirm.

I.      Background

At about noon on 21 June 2018, Officer Vargas was driving a marked police car southbound on the Florida Turnpike. Officer Vargas saw a gray Kia sedan flashing its lights and then pulling up alongside Officer Vargas's patrol car. The Kia's driver was a man in his sixties, and he appeared to be visibly frightened. Both the Kia driver and Officer Vargas slowed "to a very slow speed" and rolled down their windows. The Kia driver then told Officer Vargas that the driver of the white car driving directly behind the Kia had just pointed a gun at the Kia driver. Officer Vargas testified that the Kia driver appeared "very nervous," had "body tremors," and "was super afraid." Based on the Kia driver's demeanor, Officer

Vargas believed "100 percent" the man's report about a gun. The exchange between Officer Vargas and the Kia driver lasted less than one minute.

Officer Vargas obtained no contact information or license plate number for the informing Kia driver. Later attempts to locate the Kia driver -- based on Officer Vargas's description of the car and the driver -- were unsuccessful.

After receiving the tip, Officer Vargas located immediately the white Nissan -- driven by Martinez -- that was pointed out by the Kia driver. Officer Vargas slowed down so that Martinez could pass him but "noticed the white Nissan didn't want to pass [him], so [Officer Vargas] had to slow down more and more." When Martinez finally passed Officer Vargas, Officer Vargas called for backup, activated his blue lights, and blew his horn to get Martinez's attention. Nevertheless, Martinez continued driving for two minutes before stopping, driving past areas suitable for a driver to pull over.

After Martinez stopped and after the backup officers arrived, Officer Vargas approached the car and asked whether Martinez had a gun in the car. In response, Martinez made a comment about "road rage." After officers assisted Martinez in getting out of the car,[1] officers searched the car. Within thirty seconds, officers

---

[1] Martinez has a physical disability requiring crutches.

3

found a gun in a storage area underneath the steering column. Officers then placed Martinez under arrest.

Martinez later moved to suppress the gun found in his car.[2] Martinez argued that the anonymous tip from the Kia driver lacked sufficient indicia of reliability that would give rise to reasonable suspicion to justify a traffic stop. Martinez also asserted that the warrantless search of his car was unlawful.

Following a suppression hearing, the magistrate judge issued a report and recommendation ("R&R") recommending denying Martinez's motion. To be exact, the district court overruled in part and sustained in part Martinez's objections to the R&R. But apart from two minor factual corrections, the district court adopted entirely the R&R and denied Martinez's motion to suppress.

Martinez entered a conditional guilty plea, reserving his right to appeal the district court's denial of his motion to suppress. The district court then sentenced Martinez to a below-guidelines sentence of time served.

---

[2] Martinez also moved unsuccessfully to suppress his "road rage" comment. Martinez, however, raises no challenge to the district court's ruling on the comment.

II.    Discussion

We review the district court's denial of "a motion to suppress evidence under a mixed standard, reviewing the court's findings of fact for clear error and the application of law to those facts de novo, construing the facts in the light most favorable to the prevailing party below." United States v. Pierre, 825 F.3d 1183, 1191 (11th Cir. 2016). We review de novo a district court's determinations about reasonable suspicion and probable cause. See Ornelas v. United States, 517 U.S. 690, 699 (1996).

A. Traffic Stop

Consistent with the Fourth Amendment, a police officer may conduct a brief investigative traffic stop when the officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." Navarette v. California, 572 U.S. 393, 396 (2014). Reasonable suspicion is determined based on the totality of the circumstances, including "both the content of information possessed by police and its degree of reliability." Id. at 397. In deciding whether reasonable suspicion existed at the pertinent time, we consider whether reasonable suspicion existed objectively under the circumstances. See United States v. Nunez,

455 F.3d 1223, 1226 (11th Cir. 2006).  An anonymous tip can give rise to reasonable suspicion justifying an investigatory stop if the tip contains "sufficient indicia of reliability."  Navarette, 572 U.S. at 397.

The evidence in this case, viewed in the light most favorable to the government, supports the district court's determination that the Kia driver's tip bore sufficient indicia of reliability.  First, we have said that "[a] face-to-face anonymous tip is presumed to be inherently more reliable than an anonymous telephone tip because the officers receiving the information have an opportunity to observe the demeanor and perceived credibility of the informant."  See United States v. Heard, 367 F.3d 1275, 1279 (11th Cir. 2004).  Demeanor counts for a lot.  Although Officer Vargas's face-to-face interaction with the Kia driver was brief, Officer Vargas observed immediately that the Kia driver appeared "very nervous" and "super afraid."  Based on the driver's demeanor and on Officer Vargas's experience, Officer Vargas believed reasonably that the driver's testimony was credible.

Other pertinent circumstances that weigh in favor of the tip's reliability are (1) that the Kia driver witnessed personally the reported incident, (2) was reporting an incident that had just happened, and (3) identified the specific car involved.  In Navarette, the Supreme Court determined that an anonymous 911 caller's report that a truck had just run her off the road bore sufficient indicia of reliability to

6

support a traffic stop.  See 572 U.S. at 404.  Among other things, the Supreme Court found the tip reliable because -- like the Kia driver in this case -- the 911 caller identified a specific vehicle, "claimed eyewitness knowledge of the alleged dangerous driving," and made a contemporaneous report of the incident "under the stress of excitement caused by a startling event."  See id. at 399-400.

Martinez's attempts to distinguish Navarette are unavailing.  That the 911 caller in Navarette could later be identified and traced through the 911 system was not, by itself, dispositive to the Supreme Court's decision; that fact was, instead, "one of the relevant circumstances that, taken together, justified the officer's reliance on the information reported in the 911 call."  See id. at 400-01.  Anyway, more than one set of facts will satisfy the law in these kinds of cases.

We also reject Martinez's assertion that this case is controlled by the Supreme Court's decision in Florida v. J.L., 529 U.S. 266 (2000).  In J.L., the Supreme Court concluded that an anonymous "bare-boned" tip describing only the identity and location of a man possessing a gun was insufficient to provide reasonable suspicion.  529 U.S. at 270-71.  Unlike the Kia driver's tip in his case, the anonymous tip at issue in J.L. was made by an unknown caller (not face-to-face), from an unknown location, and contained no information about how the caller knew about the alleged gun.  See 529 U.S. at 270-71.

7

A finding of reasonable suspicion is further bolstered by Martinez's reluctance to pass Officer Vargas after the Kia driver's report -- a report that Martinez likely would have witnessed happening directly in front of him in traffic -- and by Martinez's undue delay in stopping.  See United States v. Pruitt, 174 F.3d 1215, 1220 (11th Cir. 1999) (noting that a driver's "reluctance to stop" is a factor that might "contribute to the formation of an objectively reasonable suspicion of illegal activity.").

Given the totality of the circumstances presented in this case, the Kia driver's tip was sufficiently reliable to give rise to reasonable suspicion that Martinez had committed a crime: aggravated assault with a firearm in violation of state law.  The district court committed no error in determining that the traffic stop was lawful.


B.  Vehicle Search


Under the "automobile exception" to the Fourth Amendment's warrant requirement, police officers may conduct a warrantless search of a vehicle if probable cause exists to believe the vehicle contains contraband or evidence of criminal activity.  California v. Acevedo, 500 U.S. 565, 580 (1991).  Probable cause exists when "under the totality of the circumstances, there is a fair

probability that contraband or evidence of a crime will be found in the vehicle." United States v. Lindsey, 482 F.3d 1285, 1293 (11th Cir. 2007).

Considering the totality of the circumstances presented in this case, the district court committed no error in determining that probable cause existed to justify a search of Martinez's car. Martinez was pulled over based on the Kia driver's seemingly trustworthy report that Martinez had just pointed a firearm at another motorist in traffic. The information in that tip was then corroborated by Martinez's "road rage" comment made in response to Officer Vargas's question about whether Martinez had a gun: not a flat "no." Given those circumstances -- combined with Martinez's failure to stop immediately after Officer Vargas signaled for Martinez to pull over -- an objective officer could conclude reasonably that a fair probability existed that evidence of a crime (the gun Martinez purportedly brandished) would be found in Martinez's car. See Lindsey, 482 F.3d at 1293.

Even absent probable cause, the officers' search of Martinez's car constituted a permissible protective search for weapons under Michigan v. Long, 463 U.S. 1032 (1983). Under Long, police officers may search "the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden" when officers can believe reasonably that a suspect is dangerous and may gain immediate control of weapons. 463 U.S. at 1049. In determining

whether a protective search of an automobile is permissible, we consider "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id. at 1050.

Given that Martinez had just been accused of brandishing a firearm, that Martinez did not deny he had a gun, and that Martinez's comment appeared to confirm that a "road rage" incident had occurred, an objective officer could conclude reasonably that Martinez was dangerous and had a weapon accessible within the passenger compartment of his car.  That Martinez had already been removed from the car and, thus, might not have been able to access immediately a weapon when the car was searched does not change our conclusion.  See Riley v. City of Montgomery, Ala., 104 F.3d 1247, 1253 (11th Cir. 1997) (noting that a suspect's removal from the car is inconsequential to the lawfulness of a protective search because, "[i]f the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside.").

The district court committed no error in denying Martinez's motion to suppress.  We affirm Martinez's conviction.

AFFIRMED.