[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11101

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

SAMUEL HOWARD,
a.k.a. Sam,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 7:18-cr-00021-WLS-TQL-1

_____

Before NEWSOM, LUCK, and BRASHER, Circuit Judges.

PER CURIAM:

Samuel Howard was convicted of two counts of possessing with intent to distribute methamphetamine. He now challenges the district court's denial of his motion to suppress, its exclusion of evidence, and the sufficiency of the evidence to convict him. We affirm.

## FACTUAL BACKGROUND

On October 11, 2016, deputies from the narcotics division of the Thomas County Sheriff's Office received a tip from a confidential informant that a young African American male with dreadlocks and driving a blue Buick would be delivering methamphetamine that afternoon near 2050 Church Street in Meigs, Georgia. Agent Keith Newman established surveillance from a nearby street, and other agents observed the surrounding roads to monitor incoming traffic. Around 5:00 p.m., Agent Newman saw a blue Buick, whose driver matched the confidential informant's description, approach 2050 Church Street and slow to a near-stop before continuing onto the next street and stopping.

Agent Newman and his partner pulled up and stopped in front of the Buick, turned their lights on, and approached the car. Inside the car were Howard and a passenger, Tokesha Bailey. As Agent Newman approached, he smelled an "overwhelming" odor

of burnt marijuana emanating from the Buick.  The deputies instructed Howard and Ms. Bailey to get out of the car, then searched it.  Inside they found a digital scale with methamphetamine residue on it, over eighty grams of methamphetamine ice in the center console, some eighteen-hundred dollars in cash, and two cell phones.  A later forensic analysis of the phones showed text messages with a contact named "Ice Cory" setting up a cash purchase on October 11 at 2050 Church Street.  Another text to "Ice Cory" read, "Come to Moultrie an[d] bring ounce of ice."

In April 2018, the Georgia Bureau of Investigation launched another investigation into Howard's drug dealing activities.  Agent Stripling Luke had begun an investigation into a methamphetamine distributor named Kim Wesley and eventually arrested him.  Mr. Wesley, after he was arrested, agreed to cooperate with the government to find his drug source.  Agent Luke showed Mr. Wesley a picture of Howard, whom Mr. Wesley knew as "Jerome Cruze," his drug supplier.  Mr. Wesley sent several text messages to Howard and set up an April 28 meeting at McDonald's to purchase eight ounces of methamphetamine.

On the evening of April 28, Howard arrived at the McDonald's in a blue Buick, then left his vehicle to go inside the restaurant.  Mr. Wesley, observing the scene from across the street, again identified Howard as his dealer.  Once Howard exited the McDonald's, Agent Luke and his partner got out of their car, ordered Howard to the ground, and handcuffed him.  When Howard was on the ground, Agent Luke asked him where his car keys were.  Howard

denied having a vehicle in the parking lot, but Agent Luke immediately found the keys clutched in Howard's hand. Agent Luke pried Howard's car keys from his hand and searched the car, where Agent Luke found eight ounces of crystal methamphetamine in a box in the front seat.

## PROCEDURAL HISTORY

The government obtained a two-count indictment against Howard for possessing with intent to distribute more than fifty grams of methamphetamine in violation of 21 U.S.C. section 841(a)(1). Count one related to the October 2016 arrest and also named Ms. Bailey as a codefendant. Count two related to the 2018 arrest.

Howard filed a motion to suppress the evidence gathered from both arrests. He argued that the confidential informant's tip in 2016 did not give law enforcement reasonable suspicion needed to pull him over. He also argued there was no probable cause to search his car because although Agent Newman claimed he smelled marijuana, the police never found any when they searched the car. As to the 2018 incident, Howard argued there was no probable cause to arrest him or search his car because law enforcement had approached him "before any illegal or even suspicious behavior had occurred." He also argued that any statements he had made after his arrest should be suppressed under *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

The district court held a hearing on the motion to suppress and later denied it. It found that the confidential tip in 2016 provided reasonable suspicion for law enforcement to stop Howard's vehicle. It also credited Agent Newman's testimony that he had smelled marijuana coming from Howard's car, which established probable cause to search the vehicle for contraband. As to the 2018 arrest, the district court held that Mr. Wesley's identification of Howard as his drug dealer and the agents' observing Howard arrive at the McDonald's at the time arranged for the drug deal created probable cause to arrest Howard and search his car. And, the court explained, any statements Howard made "were not obtained in violation of his constitutional rights."

His motion to suppress having been denied, Howard elected for a bench trial on both counts of the indictment. The government introduced essentially the same evidence from the suppression hearing at the bench trial. Howard introduced Ms. Bailey, who had pleaded guilty to misprision of a felony in exchange for the dismissal of count one of the indictment, as his sole witness.

Ms. Bailey testified that, after the 2016 incident, she had initially told law enforcement officers that the phones and drugs in Howard's car belonged to her. But, she testified, after she was federally indicted, she told Agent Newman that the drugs and phones belonged to Howard and that she hadn't known about the drugs until they were pulled over. On cross-examination, Ms. Bailey reiterated that she had initially lied to the police by saying the drugs and phones were hers.

Once Ms. Bailey was excused, Howard moved to recall Agent Newman and introduce a video of Ms. Bailey's initial statements to Agent Newman where she claimed ownership over the drugs in the 2016 arrest. The government objected that the testimony was cumulative and hearsay, but Howard argued that the video would be admissible under Federal Rule of Evidence 613(b) to show Ms. Bailey's body language as she "emphatic[ally]" claimed ownership of the drugs. The district court excluded the evidence as cumulative.

After the trial, the district court convicted Howard on both counts. In its order detailing findings of fact and conclusions of law, the district court found that the government's witnesses were credible. It also credited Ms. Bailey's testimony that the drugs and cell phones belonged to Howard and that she had initially lied to the police. The district court sentenced Howard to 168 months' imprisonment on each count, to be served concurrently. Howard appealed his convictions.

## STANDARD OF REVIEW

We review the denial of a motion to suppress evidence for clear error as to the district court's findings of fact and de novo as to the district court's application of law to those facts. *See United States v. Barber*, 777 F.3d 1303, 1304 (11th Cir. 2015). We view the evidence in the light most favorable to the party that prevailed before the district court—here, the government. *See id.* And we review the district court's evidentiary rulings under an abuse of discretion standard, "which is to say we defer to its decisions to a

21-11101                 Opinion of the Court                 7

considerable extent." *See United States v. Brown*, 415 F.3d 1257, 1264–65 (11th Cir. 2005).

"We review sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the [district court's] verdict." *United States v. Trujillo*, 146 F.3d 838, 845 (11th Cir. 1998). We will uphold the verdict if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *United States v. Suba*, 132 F.3d 662, 671 (11th Cir. 1998)).

## DISCUSSION

Howard raises three issues on appeal. First, he argues that the district court erred in denying his motion to suppress evidence obtained from the two searches of his car in 2016 and 2018. Second, he contends the district court erred by excluding video evidence of Ms. Bailey's police interview at trial. Third, he asserts the evidence was insufficient to convict him beyond a reasonable doubt. We address each issue in turn.

### A.

Howard first argues that the district court erred when it denied his motion to suppress the drugs and cell phones from his 2016 arrest and the drugs from his 2018 arrest. He also claims the district court should have suppressed any custodial statements he made following his arrest. We disagree.

The Fourth Amendment protects citizens against "unreasonable searches and seizures." U.S. Const. amend. IV. A traffic stop is "unreasonable" unless there exists reasonable suspicion—"some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Cortez*, 449 U.S. 411, 417 (1981). "Reasonable suspicion, while dependent upon the 'totality of the circumstances,' . . . 'can arise from information that is less reliable than that required to show probable cause.'" *United States v. Heard*, 367 F.3d 1275, 1279 (11th Cir. 2004) (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)). Once law enforcement agents have lawfully stopped a vehicle, they may conduct a warrantless search if there is probable cause—that is, if an officer under the circumstances could reasonably conclude—that the vehicle contains contraband. *See United States v. Ross*, 456 U.S. 798, 809 (1982). The search may extend to "every part of the vehicle and its contents that may conceal the object of the search." *Id.* at 825.

Here, the officers had reasonable suspicion to stop Howard's car during the 2016 arrest. Law enforcement agents had received information from a confidential informant that a man matching Howard's description and driving a blue Buick would be dealing methamphetamine near 2050 Church Street on October 11. They then saw Howard drive up to the address in a blue Buick and slow down in front of it, stopping on a street nearby. "Even an anonymous tip can . . . give rise to reasonable suspicion, as long as the information provided contains 'sufficient indicia of reliability to

justify the investigatory stop.'" *Heard*, 367 F.3d at 1278 (quoting *White*, 496 U.S. at 332). Here, the tip was not anonymous, but from a known source. And the source's account was largely corroborated. That's enough, we've said, for reasonable suspicion. *Cf. Heard*, 367 F.3d at 1280 (holding that an anonymous, face-to-face tip created reasonable suspicion that defendant possessed a weapon).

The officers also had probable cause to search Howard's car for marijuana. Agent Newman testified that as he approached Howard's stopped car, he smelled the "overwhelming" odor of burnt marijuana. "[T]he smell of burnt marijuana emanating from a vehicle is sufficient probable cause to search a vehicle," *Merricks v. Adkisson*, 785 F.3d 553, 560 (11th Cir. 2015); *accord United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir.1991) (en banc), even if the marijuana was not ultimately found in the car.

Probable cause also existed to arrest Howard and search his car in 2018. Mr. Wesley, cooperating with police officers, had positively identified a picture of Howard as his drug dealer, although he knew Howard as "Cruze." Mr. Wesley then arranged a methamphetamine purchase from Howard in a phone call that was monitored by police. Howard arrived on time at the pre-arranged location, and Mr. Wesley again identified Howard as his drug dealer. This information created a "fair probability" that Howard was engaged in criminal activity. *See United States v. Goddard*, 312 F.3d 1360, 1363 (11th Cir. 2002) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)) (explaining that an informant's tip, combined

with "[o]bservations and other information supplied by officers" can give rise to probable cause). For the same reasons, there was also probable cause to search Howard's vehicle for the meth he agreed to bring to the drug deal. *See United States v. Lanzon*, 639 F.3d 1293, 1299–1300 (11th Cir. 2011). Howard thus has not shown that the drugs should have been suppressed.

Finally, Howard argues that the district court should have suppressed testimony about any statements he made after his arrest under *Miranda*. At trial, the government introduced only one post-arrest statement of Howard's: he denied having a car in the McDonald's parking lot when Agent Luke asked where his keys were. But Agent Luke had lawfully detained Howard at that point, and he did not violate *Miranda* by asking where Howard's keys were during his search. *Cf. United States v. Jones*, 543 F.2d 1171, 1173 (5th Cir. 1976) (explaining that "routine inquiries into the ownership of a stopped vehicle, the identity of its driver or occupants, and other such matters by law enforcement personnel do not constitute custodial interrogation" under *Miranda*).

## B.

Howard next argues that the district court abused its discretion when it declined to admit a video of Ms. Bailey's police interview as extrinsic evidence that Ms. Bailey lied at trial when she said the phones were Howard's. Howard argues that the video could have disproved Ms. Bailey's trial testimony and "create[d] a reasonable doubt that [he] was not the possessor."

Extrinsic evidence of a witness's prior statement that is inconsistent with her trial testimony may be admissible under Federal Rule of Evidence 613(b).  But for two reasons, the district court didn't abuse its discretion in excluding the video.

First, the video was not a prior inconsistent statement under rule 613(b).  Ms. Bailey's testimony was consistent with the video: she initially told the agents that the cell phones and drugs in Howard's car were hers.  But Ms. Bailey explained at trial why her initial statements were lies, the phones belonged to Howard, and she hadn't known about the drugs before Ms. Bailey and Howard were pulled over.  "Exclusion of prior consistent testimony is proper under [rule] 613."  *United States v. Jones*, 913 F.2d 1552, 1565 (11th Cir. 1990).

Second, the video was cumulative of Ms. Bailey's testimony.  The video showed what Ms. Bailey testified to at trial—that she initially claimed the phones and drugs were hers.  "District courts are well within their discretion to exclude even relevant evidence for undue delay, waste of time, or needless presentation of cumulative evidence."  *United States v. Dohan*, 508 F.3d 989, 993 (11th Cir. 2007) (quoting Fed. R. Evid. 403).

## C.

Howard finally challenges the sufficiency of the evidence.  Though "we review *de novo* a district court's denial of a judgment of acquittal," we must "consider the evidence in the light most favorable to the Government, drawing all reasonable inferences and

credibility choices in the Government's favor. If a reasonable [fact-finder] could conclude that the evidence establishes guilt beyond a reasonable doubt, we will affirm the verdict." *United States v. Browne*, 505 F.3d 1229, 1253 (11th Cir. 2007) (internal citations and footnote omitted).

Here, a reasonable factfinder could have determined that Howard was guilty of the 2016 offense beyond a reasonable doubt. To convict Howard, the district court had to find that he (1) had knowingly (2) possessed over fifty grams of methamphetamine and (3) had intended to distribute it. *See United States v. Gamboa*, 166 F.3d 1327, 1331 (11th Cir. 1999). The evidence at trial showed that Howard possessed distribution quantities of methamphetamine—over eighty grams—in his center console. Text messages on Howard's phone evidenced an intent to distribute the methamphetamine, which also supported the finding that he knowingly possessed it. The district court also chose to credit Ms. Bailey's testimony that she had initially lied to police and that the drugs in fact belonged to Howard. This evidence, viewed in a light most favorable to the government, would allow a factfinder reasonably to conclude that Howard was guilty beyond a reasonable doubt of the 2016 offense.

Howard argues that some of the evidence was consistent with Ms. Bailey owning the drugs and thus reasonable doubt existed as to his conviction. But that is not enough to show insufficiency of the evidence. Because a factfinder "'is free to choose between or among the reasonable conclusions to be drawn from the

evidence presented at trial,' our sufficiency review requires only that a guilty verdict be reasonable, not inevitable, based on the evidence presented at trial." *Browne*, 505 F.3d at 1253 (quoting *United States v. Starrett*, 55 F.3d 1535, 1541 (11th Cir. 1995)).

A reasonable factfinder could also have convicted Watson for the 2018 offense. The evidence at trial, viewed in the government's favor, showed that Mr. Wesley had previously known Howard under the name "Cruze" and was able to identify Howard as "Cruze." After Mr. Wesley arranged over the phone for Howard to deal methamphetamine at McDonald's, Howard arrived at the appointed time. When officers retrieved keys off of Howard and used them to unlock his car, they found methamphetamine inside on the passenger seat in an amount consistent with distribution but inconsistent with personal use. A reasonable factfinder certainly could have found Howard guilty from this evidence.

**AFFIRMED.**